# Pollock *versus* United States Mutual Accident Association.

1. Where a policy of insurance in an accident insurance company provides that its benefits shall not extend to death or injury caused " by the taking of poison," an involuntary taking of poison, by mistake, causing death, is within said provision in the policy.

2. A certificate or policy of insurance issued on the life of A. by a mutual accident insurance company, insuring him against " injuries effected through external, violent and accidental means," provided that the policy should not extend to any bodily injury of which there shall

[Pollock *v.* United States Mut. Accident Asso.]

be no external and visible sign, or to any bodily injury caused directly or
indirectly "by the taking of poison." The assured, being present in a
store where a salesman was offering for sale a sample of birch oil, and
mistaking it for "milk of birch," first tasted, and then took a good drink
of the birch oil, from the poisonous effects of which he died within twen-
ty-four hours. It was admitted, in a case stated, that the deceased mis-
took the birch oil for "milk of birch" which he had been in the habit
of drinking, a harmless beverage, which very closely resembles in color,
smell and taste "birch oil." In an action by the widow of said insured,
the beneficiary named in the policy, against the insurance company to
recover the sum insured: *Held*, that the terms of the policy did not ex-
tend to the cause of the death, and that the court below, therefore,
rightly entered judgment, on the case stated, for the defendant.

January 29th 1883. Before MERCUR, C. J., PAXSON, STER-
RETT, GREEN and CLARK, JJ. GORDON and TRUNKEY, JJ.,
absent.

ERROR to the Court of Common Pleas, No. 3, of *Phila-
delphia county :* Of January Term 1883, No. 118.

Covenant, by Catharine A. Pollock, against the United
States Mutual Accident Association, of the city of New York,
upon a policy of insurance issued by the said company upon
the life of Henry Pollock, the plaintiff's husband.

The parties agreed upon a case stated which set forth sub-
stantially the following facts: The corporation defendant was
chartered under the laws of New York; the object of the
association being the accumulation of a fund for the mutual
benefit of its members, or their beneficiaries, "who shall have
sustained, while members of the association, bodily injuries,
whether fatal or disabling, effected through or by external
violent and accidental means." Said company issued a cer-
tificate or policy to Henry Pollock, dated March 7th 1882, the
principal sum to be raised by assessment from members in his
class, not exceeding $5,000, to be paid to his wife, Catharine
Pollock, within sixty days after due proof that said insured
"shall have sustained bodily injuries effected through external
violent and accidental means . . . . and such injuries alone
shall have occasioned death within ninety days from the hap-
pening thereof . . . . Provided that benefits under this cer-
tificate shall not extend to any bodily injury of which there
shall be no external and visible sign; nor to any bodily injury
happening directly or indirectly in consequence of disease . . . .
or by the taking of poison . . . And no claim shall be made
under this certificate when the death or injury may have been
caused by . . . suicide, felonious or otherwise, sane or insane
. . . or self-inflicted injuries . . . The member is required to
use all due diligence for personal safety and protection."

The case stated further set forth: "That the said Henry
Pollock was by occupation a commercial traveler, and sold

goods for his father, John Pollock, who is a brush manufacturer in the borough of Easton, Pennsylvania, the deceased son being a resident of the same place.

"That on Saturday, April 15th 1882, the said Henry Pollock, being upon a business trip, and having reached the borough of White Haven, Penna., went into a store in that place, kept by a man named John S. Parke, to whom said Pollock was in the habit of selling brushes. That the said Parke, who keeps a general country store, also buys from the small distillers in the neighborhood the essential oils of birch and wintergreen. That while the said Pollock was in the store and engaged in showing his samples to the proprietor, a distiller by the name of John S. Keiper came in with a can of 'birch oil' to sell to Parke. Parke left Pollock, and taking the can of oil from Keiper to examine the same, poured a tumbler about two-thirds full, held it up to the light and then set it down upon the counter. Parke then said, 'Come, boys, I will set them up,' or 'Now I will treat, won't you take something?' and Pollock thereupon took the glass, either from Parke's hand or from the counter, and said, 'I don't care if I do;' whereupon Pollock tasted it, then took a good swallow. Then Keiper said, 'Young man, you have killed yourself!' Pollock laughed and said that 'he had often drank it on the Pocono Mountain, where they made it,' and with this remark drank the balance of the oil.

"That during the previous summer, to wit, the summer of 1881, the said Henry Pollock, together with one Robert Martin, a brush manufacturer of New York city, and Allen Carpenter, a dry goods merchant of Easton, Pa., and the families of the three named, had boarded on the Pocono Mountains in Monroe county, at a public house kept by a man named Peter Mervine; that in close proximity to the hotel where the party was staying there was a distillery, operated by a son of the proprietor named above, where the essential oil of birch was manufactured; that the said Pollock and the other members of the party, including ladies and children, frequently drank at this distillery 'the milk of birch,' or 'lighten,' which is the water through which the oil passes in the process of distilling, and which in color, smell and general appearance can hardly be distinguished from the genuine 'oil of birch.'

"That after the said Pollock had drank the 'birch oil,' as hereinbefore described, he remained in the store of the said Parke for from one hour to two hours, and after selling some goods, left the store, having remarked to. Parke that he would soon call and see him at his (Parke's) new store at Weatherly, Pa. That while in Parke's store, after having drank the oil,

[Pollock *v.* United States Mut. Accident Asso.]

Pollock was asked 'how he felt on the oil,' and he answered, 'all right.'

"That after the said Pollock left Parke's store he went to the hotel, sent the hostler for his samples, and afterwards took the 3 P. M. train for Easton, his home. That he arrived at the Lehigh Valley Railroad Company's depot at South Easton at about 6.25 P. M., and rode in the omnibus which carries passengers to and from that depot, to his house on Front street, in the borough of Easton, a distance of about one-half mile ; that during the ride over to town he told the driver 'to hurry up, that he was sick ;' that he was taken violently ill as soon as he got into the house ; that Dr. Isaac Ott, the family physician, was sent for and attended him, and that subsequently Dr. Traill Green was called in to assist him ; that all that medical skill could do to save his life was done, but without avail, as the said Pollock died the next day, to wit, on Sunday, April 16th 1882, at 11 A. M.

"That the death of the said Pollock was caused solely by the 'oil of birch' which he had taken by mistake, the said oil being a deadly poison ; that the said 'oil of birch' was taken by the said Pollock without any intention of taking life, and without the knowledge by the said Pollock of its deadly effect, he having mistaken it for 'lighten,' or the 'milk of birch,' which he had drank scores of times before, and which is a harmless beverage.

"That due notice of the death of the said Pollock was served upon the association, defendant, at its place of business in the city of New York on Monday, the 17th day of April, 1882, and that satisfactory proof of the fact and cause of death have been furnished to the managers of the said association.

"If the court be of the opinion that the death of the said Pollock was such an accidental death as is intended to be covered by the certificate of membership hereinbefore referred to, then judgment to be entered for the plaintiff for the sum of five thousand dollars, with interest thereon from the fifteenth day of June, A. D. 1882, but if not, then judgment to be entered for the defendant. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein."

The court, in an opinion by LUDLOW, P. J., entered judgment for the defendant on the case stated, whereupon the plaintiff took this writ of error, assigning for error said judgment.

*James W. Wilson* (*Edward J. Fox* with him), for the plaintiff in error.—The condition relieving the company from liability for death caused " by the taking of poison " should

not be construed to apply to accidental poisoning; "taking" means intentional taking. The case falls within the rule that "where an exception in a policy of insurance is capable of two interpretations, equally reasonable, that must be adopted which is most favorable to the insured, for the language is that of the insurer": Western Ins. Co. *v.* Cropper, 8 Cas. 351; Commonwealth Ins. Co. *v.* Berger, 6 Wr. 285: Ins. Co. *v.* O'Maley, 1 Norris 400.

*William S. Price* (with him *William Bro. Smith*), for the defendant in error.

Chief Justice MERCUR delivered the opinion of the court, February 12th 1883.

The defendant is a mutual insurance company. The losses are paid by assessment on its members. The object of the company is to insure against bodily injuries produced in a certain manner specified, that is, caused by external violent and accidental means. Not injuries caused by any one of these means, but by all of them combined. Hence the certificate of membership expressly declares the benefits shall not be held to extend to any case of death or personal injury unless the claimant shall establish by direct and positive proof that the death or personal injury "was caused by external violence and accidental means." To remove all doubt as to the liability of the association to the plaintiff in this case the certificate further declares the benefits under it shall not extend to any death or disability which may have been caused "by the taking of poison." It is not necessary that the poison be taken with an intent to produce death, in order to defeat a claim flowing from the right of membership. If the poison be innocently taken, and without any knowledge of the injurious effect which it was likely to produce, and did produce, so far as the person taking it is concerned, the effect may be said to be accidental. If we go a step further and admit in such case, that the "means" are accidental; yet it is one of the accidental means expressly excepted from the protective power of the certificate. The liability for injuries caused by external violence is still further limited and restricted. Thus the benefits do not extend to cases where the injury was "the result of design either on the part of the member or of any other person." To hold the association liable for a death caused by taking poison would not only be in conflict with the letter of the agreement, but contrary to the whole purpose for which the association appears to have been formed.

Judgment affirmed.