## H. W. PICKETT v. PACIFIC M. L. INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WARREN COUNTY.

| 144 | 79 |
| 159 | 57 |

| 144 | 79 |
| f207 | ²476 |

| 144 | 79 |
| 38SC | 631 |

Argued May 7, 1890.
Re-argued May 5, 1891—Decided October 5, 1891.
[To be reported.]

(a) A policy of insurance was issued in $5,000, to be paid after satisfactory proof that the assured had "sustained such violent and accidental injuries as shall externally be visible upon his person, and which alone shall have caused his death within ninety days of the date of such accident;"

(b) With the following condition: "This insurance shall not cover . . . . death or injury resulting from or attributable partially or wholly to any of the following causes: Disease or bodily infirmity, . . . . . fits, . . . . . intoxication, . . . . . medical or surgical treatment, . . . . taking of poison . . . . . inhalation of gas."

Statement of Facts.

(c) The evening of the day the policy was issued, the insured, in good health, went down into a well at a house where he was boarding, to make repairs to a pump, and in a short time was found in the well dead, from asphyxia resulting from the inhalation of poisonous gas at the bottom of the well:

1. The death was by external, violent and accidental means, within the insurance. The condition against "inhalation of gas" contemplated a voluntary and intelligent act by the insured, not an involuntary and unconscious act, and was inoperative to relieve the company from liability: Paul v. Insurance Co., 112 N. Y. 472, followed; Pollock v. Accident Ass'n, 102 Pa. 230, distinguished.

2. It was not error for the court below, on the offer of the insured, to admit the policy of insurance in evidence, overruling the objection that it was not accompanied or proposed to be accompanied by the application, as required by the act of May 11, 1881, P. L. 20.* Said act is applicable in the case of an accident policy.

3. Where, under objection and exception to the plaintiff, the court erroneously permitted the defendant company to read in evidence the application, not attached to the policy as required by said act, points presented by defendant predicated of the evidence thus admitted will not be considered by the Supreme Court.

Argued before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.; re-argued before a full Bench.

No. 345 January Term 1890, Sup. Ct.; court below, No. 42 September Term 1889, C. P.

On August 22, 1889, H. W. Pickett, administrator of John W. Moore, deceased, brought assumpsit against the Pacific Mutual Life Insurance Company of California, filing a statement of claim to recover upon a policy of insurance for $5,000, issued by said company upon the life of said John W. Moore on June 4, 1889. Issue.

At the trial, on February 4, 1890, the plaintiff offered the policy in evidence. Objected to, as incompetent and irrelevant, unless it is accompanied or proposed to be accompanied by the application for the policy.

By the court: Objection overruled, offer admitted; exception.[10]

The policy, as then read, dated June 4, 1889, in consideration of the warranties in the application and of the sum of $37.50,

---

*See Imperial Ins. Co. v. Dunham, 117 Pa. 460; New Era Ass'n v. Musser, 120 Pa. 384; Hebb v. Insurance Co., 138 Pa. 174, and especially Norristown Co. v. Insurance Co., 132 Pa. 385.

insured " John W. Moore, by occupation, profession, or employment a contractor and driller," in the sum of $5,000, for the term of twelve months ending on June 4, 1890, providing as follows :

" The said sum to be paid to the legal representative of the insured after due notice and satisfactory proof that the insured has, during the continuance of this policy, sustained such violent and accidental injuries as shall externally be visible upon his person, and which alone shall have caused his death within ninety days of the date of such accident, or if this policy be issued for both death and indemnity will pay the insured the principal sum, if . . . . .

" Except that if injured in any occupation or exposure, classed by the company as more hazardous than here specified, then the insurance and weekly indemnity shall be for such amounts as the premium paid will purchase, at the rates fixed by this company for such increased hazard.

" This policy is subject to the conditions named on the back hereof, which cannot be altered or waived by any agent."

One of the conditions on the back of the policy, under which it was issued and accepted, was the following :

" 6. This insurance shall not cover disappearances, nor injuries of which there is no visible external mark upon the body of the insured ; nor death or injury resulting from or attributable partially or wholly to any of the following causes: Disease or bodily infirmity, or acts committed by the insured while under mental aberration produced by disease or bodily infirmity, fits, vertigo, hernia, sleep-walking, intoxication, medical or surgical treatment, sunstroke, freezing, taking of poison, contact with poisonous substances, inhalation of gas, war or riot, quarreling, dueling, . . . . ."

The plaintiff then adduced testimony to the effect that a little after 5 o'clock in the evening of June 4, 1889, the day the policy was issued, John W. Moore, the insured, went out to the well at the house where he was boarding for a drink of fresh water; that he came back to get water to prime the pump, and said he would fix it so that it would not "bother us" any more; that he got a hatchet, opened the well by removing two planks, and got into it; that he was at the time in good health and had worked in the well about two months before; that

Statement of Facts.

the well was a driven well about forty feet deep, but from the surface was about four or five feet in diameter extending to about twelve feet in depth, and there was a waste-hole in the pipe about half way down; that, in a short time after the insured went to the well with the hatchet, he was found lying at the bottom of the dug-out portion, dead. Two or three of the witnesses who went down into the well, to bring him up, were overcome by gas and were themselves carried out unconscious. The agent of the defendant company testified for the plaintiff that the policy in suit had been issued to the deceased between four and five o'clock the afternoon of the same day.

The defendant proved and offered in evidence the application of the insured for the policy, as a part of the contract entered into by the defendant company in issuing the policy. Objected to as incompetent and irrelevant, the same not being attached to the policy, nor a copy thereof.

By the court: Objection overruled, offer admitted; exception.

In this application it was stated: " 6. The class of risk under my occupation is ordinary. . . . . 15. I understand this company's classification of risks, and agree that for any accident happening to me while engaged in any occupation, employment, or exposure, classed as more hazardous than above specified, I shall be entitled to recover only such amount as the premium paid will purchase at the rates charged for such increased hazard."

Dr. F. W. Whitcomb was then called by the defendant and testified that he and Dr. Peirce had made a post-mortem examination of Mr. Moore, and that his death was caused by "asphyxia, due to the inhalation of gas." Part of the testimony of the witness is quoted in the opinion of the Supreme Court.

Under objection and exception to the plaintiff, the deposition of George A. Moore, the president of the defendant company, was admitted and read in evidence, so far as tending to show that the deceased, at the time of his death, was engaged in an occupation, employment, or exposure classed as more hazardous by the defendant company than that of a " contractor and driller." The witness testified that, according to the established rates and charges of the company, a person " whose business it was to go into water wells twelve or fifteen feet deep, for the

purpose of repairing the pipe or pumping apparatus, would on June 4, 1889, have been put in the class "hazardous" and the amount of insurance would be limited to $1,000, with a weekly indemnity of $7.50; and that on said date $37.50 would have purchased a policy of $2,500, with a weekly indemnity of $12.50, in the class "hazardous." To the witness's deposition were attached exhibits showing the resolutions of the defendant company establishing the classification and rates.

At the close of the testimony, the defendant presented the following points for instruction:

1. The clause in the policy of insurance sued upon, to wit: "This insurance shall not cover . . . . . death or injury resulting from or attributable partially or wholly to . . . . . inhalation of gas," applies to the case of death resulting from asphyxia caused by inhaling gas accumulated in the bottom of a well.[1]

2. Under the uncontradicted evidence in the case, that the plaintiff's decedent met his death from asphyxia caused from inhaling gas at the bottom of the well, the plaintiff cannot recover, and the verdict of the jury should be for the defendant.[2]

If the court should decline to affirm the preceding second point, then the court is further requested to instruct the jury:

3. That, if the jury believe from the evidence that the plaintiff's decedent, John W. Moore, descended into the well where he met his death; that at the bottom thereof there was a large accumulation of gas into which he entered; that he inhaled said gas sufficient to exclude from his lungs the proper amount of air to support life, and died therefrom, then the plaintiff cannot recover, and the verdict should be for the defendant.[4]

4. That if the jury believe from the evidence that the plaintiff's decedent, John W. Moore, died from inhaling gas at the bottom of the well, whether from accident or not, then the plaintiff cannot recover in this suit, and their verdict should be for the defendant.[5]

5. Under the evidence in this case, that the plaintiff's decedent, John W. Moore, was insured as "contractor and driller," which occupation was classed by the defendant company, and said Moore's application, in the classification of risks as "ordinary;" that the said Moore met his death in an occupation classed by defendant company in its classification of risk

as "hazardous;" that the premium of $37.50 paid by said Moore for $5,000 insurance in the occupation classed as "ordinary" would purchase only $2,500 insurance in the occupation classed as "hazardous," the plaintiff if otherwise entitled to recover can recover only for $2,500, with interest after due proofs made of the death of said Moore.[6]

6. If the plaintiff is otherwise entitled to recover, he can in no event, under the evidence, recover a verdict for more than $2,500, with interest after due proofs made of the death of said Moore.[7]

7. If the court should decline to affirm the preceding fifth and sixth points, then it is further requested to say to the jury, if the plaintiff is otherwise entitled to recover, that if the jury believe from the evidence that the $37.50 premium paid by said John W. Moore was for a policy of insurance in an occupation classed by defendant company, and in said Moore's application, as "ordinary;" that said Moore met his death while engaged in an occupation classed by the defendant as "hazardous;" that the premium paid of $37.50 in the occupation classed as "ordinary" would purchase only $2,500 insurance in the occupation classed as "hazardous," then the plaintiff can recover only $2,500, with interest after due proofs made of the death of said Moore.[8]

8. In order to entitle the plaintiff to recover, in any event, the injury from which he met his death must have been such as to be externally visible upon his person, and as there is no evidence of such injury the plaintiff cannot recover.[9]

Thereupon, the court, BROWN, P. J., charged the jury in part as follows:

The policy was issued to Mr. Moore on the afternoon of the day it bears date. Soon afterwards, Moore went into a well some ten or twelve feet deep, at a place where he was boarding, for the purpose of making some repairs, and he was there found dead. His death was caused by asphyxia, resulting from the inhaling of a deadly gas or impure air at the bottom of the well, or at the bottom of the excavated part of the well. There is no evidence, and no claim, that Mr. Moore committed suicide, or that he was wanting in care, or that he voluntarily exposed himself to danger. The defendant had notice by

Arguments.

proofs of Mr. Moore's death, as required by the agreements and conditions on which the policy was issued.

It would answer no good purpose to detail the reasons on which our ruling is based. Indeed, it would require much more time than we could devote to it. We merely say that [upon the undisputed facts, the plaintiff, the administrator of John W. Moore, is entitled to recover the full amount of five thousand dollars with interest, and that you will render a verdict in his favor for the amount. As this disposes of the case as now before us, we decline to answer the several points presented by the defendant, as unnecessary.] [3]

—The jury returned a verdict for the plaintiff for $5,125. Judgment having been entered, the defendant took this appeal and assigned for error:

1, 2. The refusal of the defendant's points.[1] [2]

3. The portion of the charge embraced in [   ] [3]

5–9. The refusal of the defendant's points.[5] to [9]

10. The admission of the plaintiff's offer.[10]

*Mr. D. I. Ball* (with him *Mr. C. C. Thompson*), for the appellant:

The accident which caused Mr. Moore's death was the "inhalation of gas," producing asphyxia. The language of the policy, "This insurance shall not cover . . . . . death or injury resulting from or attributable partially or wholly to . . . . . inhalation of gas," is very simple, clear and plain, and would seem clearly to include the accident producing this death. It cannot be said, with any show of reason, that the stipulation is either obscure, doubtful, or equivocal.

1. It is urged that the insurance is an accident insurance, and that, in accordance with the spirit and intendment of the policy, the exceptions should be held to apply only to those injuries received by the insured from his voluntary and conscious, and not from his involuntary and unconscious acts. But, if the clause, "inhalation of gas," were intended to be limited to a voluntary and conscious act, the word voluntary would have been expressed in the list of classes of injuries to which the policy does not apply, instead of being left to be understood. In Pollock v. Accident Ass'n, 102 Pa. 230, this court held that the stipulation that the certificate of insurance should not apply

Arguments.

to the case of accident or death resulting from the " taking of poison," applied to the accidental taking of poison. The tak‍ing of poison, like the inhalation of gas, is one of the several exceptions to the general operation of this policy. All these conditions are included in the same category, and the decision of the principle, in the case cited, as to the exception relating to the " taking of poison," governs this other exception, the " inhalation of gas."

2. Pollock v. Accident Ass'n follows the principle decided in the other cases cited by Ludlow, J., in the court below, in S. C. 12 W. N. 252. But, it is said that those cases have been over-ruled in Paul v. Insurance Co., 112 N. Y. 472 (8 Am. St. R. 758) ; and therefore, this court will not sustain its former de-cision. But, non constat that this court will depart from the rule it has settled, a rule in accordance with the letter of the contract, and not contrary to any principle of public policy. By excluding the involuntary aspect of the exceptions, and in-jecting the word " voluntary," the New York court held in Paul v. Insurance Co. that " inhalation of gas " meant those cases of involuntary inhalation of gas resorted to in dental and surgical operations. The misfortune of this view is that the policy in this case does not say so, and makes no reference to the volun-tary acts of the insured ; and the reference to dental and surgi-cal treatment, in the category of exceptions, is far removed from the one we are discussing. Moreover, the injury from in-haling any kind of gas is the same ; asphyxia causing death. It produces no " such violent and accidental injuries as shall externally be visible upon his person ;" and it may be difficult to tell whether death is caused by such accident, or by some disease or disarrangement of the internal organs.

3. In the application, the insured was classified as to the risk under his occupation as " ordinary." When injured he was in the occupation of repairing the bottom of a well. The presi-dent of the company testified that the class of risk in which he was at work when he died was " hazardous," and that the pre-mium of $37.50 paid for $5,000 indemnity in the class " ordi-nary," would purchase only $2,500 in the class " hazardous." As this testimony was not contradicted or disputed, and the contract is plain, we submit that the learned court should have affirmed our points which are the subject of the sixth seventh,

Arguments.

and eighth assignments. Under the ninth assignment, there is no pretence of any evidence of violent or accidental injuries externally visible upon the person of Mr. Moore, and therefore, under the principal provision of the policy, we confidently submit that the plaintiff is not entitled to recover. Clearly and plainly the provision relates only to accidents, resulting in death. Such is the grammatical construction of the language used. Injuries, producing death, which are not externally visible upon the person, are somewhat numerous. The very apparent reason why the company would not assume the risk involved in deaths from such injuries, is the difficulty of determining whether the death is due to the alleged accident, or to some disease.

4. It may be said of our tenth specification that no injury was done us because we were afterwards permitted to read the application in evidence; and it may be so. But if this case is reversed, the question may be an important one on the next trial. The application and policy form the contract; and it is error to permit the policy to be read in evidence without the application is offered with it: Amer. Underwriters' Ass'n v. George, 97 Pa. 238. It was claimed by the plaintiff, under the act of May 11, 1881, P. L. 20, that, as a copy of the application was not attached to the policy, the application was no part of the contract. But the act referred to does not relate to accident insurance; only to life and fire insurance. This policy is an indemnity against certain accidents only. If loss of life, or limb, or other injury mentioned, result from such accident, the indemnity provided for must be paid. But the insurance is against accident, and not upon the life of the assured. It is not life insurance, and hence is not within the provisions of the act.

*Mr. Charles H. Noyes* and *Mr. William E. Rice* (with them *Mr. W. D. Hinckley*, *Mr. R. Brown* and *Mr. Charles W. Stone*), for the appellee:

1. The contention that in a case like this, or in those cases of accidental injury causing immediate death, resulting from drowning, suffocation, choking, all cases of death from asphyxia, lightning, electricity, or in any case of death from violent external means, it becomes necessary to show more than the body of the deceased, is repugnant to the common sense

Arguments.

and unreasonable. It may be urged with force that the provision of the policy, in this case, that the injuries shall be externally visible upon the person of the deceased, apply only in those cases where death does not actually take place within ninety days, and this for obvious reasons. A construction such as urged was given in Mallory v. Insurance Co., 47 N. Y. 52 (7 Am. Rep. 410). But this provision of the policy has received consideration and construction, contrary to the position of the defendant, in a long line of cases: Assurance Co. v. Trew, 5 H. & N. Exch.; referred to in May on Insurance, 631 ; Winspear v. Insurance Co., 6 Q. B. Div. 42 (29 Eng. R. 488) ; Insurance Co. v. Crandal, 120 U. S. 532 ; U. S. Mut. Acc. Ass'n v. Newman, (Va.) 3 S. E. Rep. 805 ; Paul v. Insurance Co., 112 N. Y. 472 (8 Am. St. R. 758) ; s. c. 45 Hun 113 ; McGlinchey v. Casualty Co., 80 Me. 251 (6 Am. St. R. 190) ; Eggenberger v. Accident Ass'n, 41 Fed. R. 172.

2. In the present case, there were external visible signs upon the person. There was a discoloring of the body, of the lips and the tongue. And it seems clear, both upon reason and authority, that where the insured, as here, is killed by an external force, his body the moment after exhibits the visible, external injuries within the purview and spirit of the policy. Any other construction would be repugnant to common sense, and would make the exception in many classes of cases co-equal with the extent of the agreement to insure, and render nugatory the protection sought in obtaining the policy. Again ; in this case, was death caused by the " inhalation of gas," within the meaning of the exceptions of the policy ? This question has never been before this court for consideration, so far as shown by any reported case, but it has been carefully considered by the courts of other states and interpreted as by the learned judge of the court below : Paul v. Insurance Co., 112 N. Y. 472 (8 Am. St. R. 758) ; Bacon v. Accident Ass'n, 123 N. Y. 304. And we submit that the case of Pollock v. Accident Ass'n, 102 Pa. 230, presents no such circumstances as are presented here, nor did the court in that case rule any of the questions arising in the case at bar.

3. The remaining ground of exemption claimed is that the intestate was injured in an occupation or exposure, classed by the company as more hazardous than that specified in the ap-

Opinion of the Court.

plication and policy. The company had failed to attach to the policy issued copies of the by-laws or application, and on the trial it became necessary, in order to sustain this exception, for the company to offer the application, and proof, dehors the policy, of the classification and by-laws of the company. This evidence was received against the objection and exception of the plaintiff. We maintain now, as at the trial, that we cannot travel outside the policy to discover the contract, because of the omission of the company to attach the copies as required by the act of May 11, 1881, P. L. 20. The purpose of the act was to impose a duty upon insurance companies, and to protect the insured. A failure to comply is an omission which cannot be taken advantage of by the company. The act was passed to prevent just the sort of hair-splitting and technical scaling which the defendant company indulges in here; and to compel a company, tendering a policy, to furnish the insured the entire contract.

OPINION, MR. JUSTICE STERRETT:

The undisputed facts, upon which the jury in this case was instructed to find for the plaintiff the full amount of his claim, are briefly as follows:

On June 4, 1889, the plaintiff's intestate, John W. Moore, received and paid for the policy of insurance on which this suit was brought, a copy of which will be found in the record. Returning to his boarding house, the same evening, he informed his landlady that he had had no dinner, and requested that his supper be prepared. He then went to the well in the open yard for a drink, and finding that the pump required priming with water, he remarked that he would fix it, so as to obviate that difficulty in the future. After procuring a hatchet, and removing planks from the opening at the top, he descended into the dug-out portion of the well, which was four or five feet wide and only ten or twelve feet deep, for the purpose of closing a small opening in the iron pipe, about midway down. A few minutes later, his lifeless remains were found at the bottom of the well. He died from asphyxia or suffocation due to the accidental and unconscious inhalation of carbonic acid or other deadly gas that had unexpectedly accumulated in the dug-out portion of the shallow well.

The well, with which deceased was familiar, and in which he had been shortly before, was one of those known as a " driven well," made by driving an iron pipe into the ground to the depth, in this case, of about forty feet.   For the distance of about ten or twelve feet from the top, the earth around the iron pipe was dug out so as to form as above stated, an open well, of about four or five feet in diameter, in which there was little or no water.  The top of the well was covered with plank.   The deceased was a strong, healthy man.   His sudden and wholly unexpected death, under the circumstances above stated, and within a few hours after he had procured the policy of insurance, undoubtedly resulted from external, violent, and accidental injuries or means, and without any conscious or voluntary act on his part.   There was no evidence, nor was it even suggested, that he had committed suicide, or that he was wanting in reasonable care, or that he voluntarily exposed himself to danger.   In describing the condition in which he found the body of deceased the physician who made the post-mortem examination testified:

" The general surface of the body was of a livid bluish color. The lips and tongue were blue.   The right side of the head was partially distended with dark blood; the left side was nearly empty.   The lungs contained more blood than they would under different circumstances ; they were somewhat congested.   The pulmonary arteries were distended with blood. The liver was slightly congested, and also the kidneys ; there was, however, no disease of the kidneys, no disease of any of the internal organs. . . . . His death was caused by asphyxia, due to the inhalation of gas."

If the latter undisputed and undoubtedly correct conclusion of fact needed any confirmation, it may be found in the testimony as to the effect of the same noxious gas on those who went to the relief of the deceased, and assisted in removing his remains from the well.   It shows how narrowly they escaped a similar violent and accidental death.

The notice and proofs of death were full and complete.   Their sufficiency was not even questioned.

In view of the undisputed facts, of which the above is an outline, the learned president of the Common Pleas refused to affirm defendant's points for charge, some of which are predicated

of the foregoing facts, and instructed the jury that upon the undisputed facts before them the plaintiff was entitled to recover, and there was accordingly a verdict and judgment in his favor.    This action of the court in refusing defendant's points, and instructing the jury in plaintiff's favor, are the subjects of complaint in the several specifications of error.

The first and main point was as follows:

"The clause in the policy of insurance sued on, to wit, ' This insurance shall not cover . . . . . death or injury resulting from or attributable partially or wholly to . . . . . inhalation of gas,' applies to the case of death resulting from asphyxia caused by inhaling gas accumulated at the bottom of the well."

This in connection with the remaining seven points, was rightly refused.    According to the undisputed facts above referred to, the death of the insured was caused by external, violent, and accidental means, and without any conscious or voluntary act on his part.    No one, knowing, as he did, the shallowness of the dug-out portion of the well, would ever suspect the presence of noxious gas therein.    Doubtless, he never for a moment contemplated the slightest danger.    His death was purely accidental; quite as much so as if he had been suddenly and unexpectedly engulfed in water, and drowned.    The deadly but invisible gas by which he was unconsciously and accidentally enveloped was undoubtedly the external and violent cause of his injury and death.    According to the physician's testimony, above quoted, its violent effect upon the vital organs of the deceased was plainly visible at the time of the post-mortem examination.

As was well said in Paul v. Insurance Co., 112 N. Y. 472, which in principle rules this case: "As to the point raised by appellant, that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere, as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death.    That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause."    In that case, the policy on which suit was brought provided that the insurance should not extend to death caused "by inhaling gas."    It appeared that the insured was found dead in bed.    Gas had escaped in the room, and death was

Opinion of the Court.

caused by breathing the atmosphere of the room filled with gas. It was held that death was not caused by the inhaling of gas, within the meaning of the policy. The company relied upon the same narrow and technical defence that is made by the defendant in this case. In an able opinion, reported in 45 Hun 313, the learned judge of the General Term, whose judgment was afterwards affirmed by the Court of Appeals, said, inter alia:

" Was the death of the intestate caused by or through 'external, violent, and accidental means,' within the language of the policy ? . . . . We should say the death was due to external and violent means as clearly as drowning. . . . . The cause of death came from outside, as surely as would a rifle ball, or water in the case of drowning. The escape of gas into the room was violent, in the same sense that would be the flow of water into a wrecked vessel. In either case, the external means constitute the cause which produces death. It is a violent death, produced by an external power, not natural. Some poisons, such as opium and chloral, produce no violent action on the human system. The man who descends into a well of carbonic-acid gas is killed with no greater violence, perhaps, than was the intestate. Yet in all these cases, the result would be called a violent death. . . . . We also think the words 'inhaling of gas' were used to designate those common uses of gas in dentistry, surgery, etc. . . . . Evidently an exception from death caused by a surgical operation was not broad enough to include the use of anæsthetics preparatory to the operation. It contemplated a voluntary and intelligent act by the assured, not an involuntary and unconscious act."

On this question, the Court of Appeals, in affirming the decision of the General Term, said:

" A careful consideration of this instrument, and of the scope and design of its provisions, leads us to the conclusion that appellant must fail in its contention. . . . . In expressing its intention not to be liable for death from 'inhaling of gas' the company can only be understood to mean a voluntary and intelligent act of the insured, and not an involuntary and unconscious act. Read in that sense, and in the light of the context, these words must be interpreted as having reference to medical or surgical treatment, in which, ex vi termini, would be included the dentist's work or a suicidal purpose. Of

course, the deceased must have, in a certain sense, inhaled gas; but, in view of the finding that death was caused by accidental means, the proper meaning of the words compels, as does the logic of the thing, the conclusion that there was not that voluntary or conscious act, necessarily involved in the process of inhaling. An accident is the happening of an event without the aid and the design of the person, and which is unforeseen. . . . . To inhale gas requires an act of volition on the person's part before the danger is incurred. Poison may be taken by mistake, or poisonous substances may be inadvertently touched; but, whatever the motive of the insured, his act precedes either fact. . . . . If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake. Policies of insurance are to be liberally construed, and, as in all contracts, conditions are to be construed strictly against those for whose benefit they are reserved."

The principles, so well stated and enforced in the cases above cited, were afterwards approvingly considered in Bacon v. Association, 123 N. Y. 304. In further support of the same principles, reference might be made to other authorities, among which are: May on Insurance, 631, in which reference is made to Trew v. Assurance Co., 6 H. & N. 839; Winspear v. Insurance Co., 6 Q. B. D. 42 (29 Eng. R. 488); Insurance Co. v. Crandal, 120 U. S. 532; Mallory v. Insurance Co., 47 N. Y. 52; North American Ins. Co. v. Burroughs, 69 Pa. 43; McGlinchey v. Casualty Co., 80 Me. 251; Eggenberger v. Association, 41 Fed. R. 172; U. S. Mut. Ass'n v. Newman, (Va.) 3 S. E. Rep. 805; but further elaboration is unnecessary.

This case is not ruled by Pollock v. Accident Ass'n, 102 Pa. 230, on which defendant relies. While that case may well stand upon its own peculiar facts, we think the present case is clearly distinguishable in its controlling facts, as well as in the principles applicable to them. In that case, the injury did not result from external, violent, and accidental means. The fatal drug was voluntarily and intentionally taken by the deceased. In deciding that case, this court never could have intended to lay down the broad rule, that in construing an accident policy

there is no distinction between external, violent, and accidental causes of death, and those cases in which death results from voluntary acts. What was decided in that case was that, under the various clauses of the policy sued on, there could be no recovery, and it was unimportant whether the means arose from the designing act of the insured or otherwise.

Another ground of defence suggested in defendant's fifth, sixth and seventh points was that the deceased was injured in an occupation or exposure classed by the company as more hazardous than that specified in the policy, etc. The points referred to appear to be predicated of testimony which was improperly before the jury. The company, in disregard of the provisions of the act of May 11, 1881, P. L. 20, had failed to attach to the policy copies of the by-laws or application, and should not have been permitted, against plaintiff's objection, to give them in evidence. The act was passed in the interest of honesty and fair dealing, and its provisions should be strictly enforced. We have no doubt they apply to such companies as the defendant.

Without further referring to the specifications of error, it is sufficient to say that neither of them is sustained. The deceased was accidentally, violently, and fatally asphyxiated by the unknown presence of a fluid foreign to his person. If that fluid had been oil, smoke, water, or molten metal, the result would have been substantially the same. Death caused, not so much by the inhalation of the fluid, as by its action in excluding life-supporting air, would have inevitably resulted. A fair construction of the policy leads to the conclusion reached by the court below, that death resulting from causes such as killed the intestate is not within any of the exemptions relied on by the company.

Judgment affirmed.