## Bloom et al. v. Brotherhood Accident Company.

*Insurance—Insurance contract—Interpretation—Death by external, violent and accidental means — Taking poison — Contact with poisonous substances.*

1. A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made, and when the words of a policy are without violence susceptible of two interpretations, that which will sustain a claim to the indemnity it was the object of the insured to obtain should be preferred.

2. In an action to recover upon a policy of insurance against personal bodily injuries received through external, violent and accidental means, the beneficiares averred that the death of the insured was caused by his having unknowingly taken a poisonous drug given him by mistake instead of a harmless drug which had been prescribed by his physician. The affidavit of defence raised the question of the legal sufficiency of the statement, on the ground that a death such as was described did not come within the terms of the policy: *Held*, the death of the insured was caused by external, violent and accidental means, and without any conscious or voluntary act on his part; the statement of claim, therefore, showed a sufficient cause of action.

3. Death caused by the taking of a drug or poison accidentally and unknowingly through the mouth is death due to an external cause.

4. Death caused by unknowingly taking a poison instead of a harmless medicine prescribed by decedent's physician is death by violent means, and is accidental.

5. The insurer is not relieved from liability by a clause in the policy to the effect that "contact with gas or poisonous or infectious substances . . . shall be classified as sickness." The taking of poison accidentally and involuntarily cannot be construed to mean contact with poisonous substances.

Statutory demurrer. C. P. Dauphin Co., Sept. T., 1921, No. 162.

*Samuel Levin* and *John R. Geyer*, for plaintiffs.

*Daniel H. Kunkel* and *Howard M. Bingaman*, for defendant.

WICKERSHAM, J., Dec. 4, 1922.—The defendant company, on July 7, 1919, issued to Barnett Bloom its contract in writing, or policy, under which it undertook to insure the said Barnett Bloom against personal bodily injuries received through external, violent and accidental means, leaving upon the body external marks of contusions or wounds visible to the eye (accidental drowning excepted), which alone, independent of all other causes, shall, within ninety days from the date of the accident, cause loss of life. It was further provided that in case of death as aforesaid, the company would pay to the beneficiaries of the insured the sum of $2000.

It is alleged that on Oct. 8, 1920, while said policy was in force, the insured, Barnett Bloom, according to directions given to him by Dr. A. Z. Ritzman, had a prescription filled by a druggist in the City of Harrisburg, directing him to take a quantity of barium sulphate; and, by mistake, the druggist gave him barium sulphite, or some other poisonous drug, which the said Barnett Bloom took, believing it to be barium sulphate, but which proved to be poison, and caused his death on Oct. 9, 1920. The plaintiffs bring this suit to recover

the amount stated on the face of said policy in the event of accidental death, to wit, the sum of $2000, together with interest.

The defendant filed an affidavit of defence raising questions of law, as provided in section 4 of the Practice Act of May 14, 1915, P. L. 483. The first, second and third objections to plaintiffs' statement raised in the affidavit of defence have been cured by amendment, and, therefore, need not be considered by us. The fourth question raised is that the statement does not set forth a cause of action; that "the said contract in writing purports to insure the said Barnett Bloom, *inter alia,* 'against personal bodily injury received through external, violent and accidental means, leaving upon the body external marks of contusions or wounds visible to the eye (accidental drowning excepted), which alone, independent of all other causes, shall, within ninety days from the date of the accident, cause the loss of life. . . .' The death of said Barnett Bloom, as set forth in said statement, is not such a death within the intent, meaning and scope of the said policy of insurance."

The legal question thus raised in the affidavit of defence requires us to interpret the paragraph of the defendant's policy of accident insurance which forms the basis of plaintiffs' action, and we come to consider whether the taking by Barnett Bloom, the insured, under the circumstances as alleged, of barium sulphite, which caused his death, comes within the terms of the policy which we have just quoted.

It appears from plaintiffs' statement that Barnett Bloom, the insured, believing himself to be indisposed, arranged to submit himself to expert examination for diagnosis and treatment for certain digestive disorders, from which he believed himself to be suffering, to Dr. A. Z. Ritzman, a reputable physician of the City of Harrisburg, and expert in taking, developing and interpreting X-ray pictures of the human body, for the purpose of determining what, if any, cause, physical or otherwise, existed or might exist because of the discomfort and ill from which he believed himself to suffer. That Dr. Ritzman prescribed barium sulphate in order that the intestinal tract might be more easily examined and photographed by the X-ray apparatus; that barium sulphate possessed little or no pronounced physiological or medicinal properties and was not dangerous; that the insured, Barnett Bloom, took the prescription to a druggist of the City of Harrisburg, who, by mistake, gave him a quantity of barium sulphite or other poisonous drug; that Barnett Bloom, being unskilled and unlearned in drugs, took the said drug or matter thus supplied, believing that it was barium sulphate, and proceeded to—having first diluted the same with milk—take the same into his body by drinking it; that shortly after taking said drug he became nauseated and violently ill and suffered grievous pain, and as a result, though despite all efforts made to relieve or assist him, he died on Oct. 9, 1920, leaving on his body external marks of contusions or wounds visible to the eye.

Did the insured, Barnett Bloom, come to his death because of "personal bodily injury received through external, violent and accidental means, . . . which alone, independent of all other causes, within ninety days, caused his death?"

A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made, and when the words of a policy are without violence susceptible of two interpretations, that which will sustain a claim to the indemnity it was the object of the insured to obtain should be preferred: Humphreys *v.* National Benefit Ass'n, 139 Pa. 264; Farner *v.* Massachusetts Ins. Co., 9 Dauphin Co. Reps. 176, affirmed by

3 D. & C.

Bloom et al. *v.* Brotherhood Accident Company.

the Supreme Court in 219 Pa. 71, upon the opinion of the court below. The rule of interpretation of an insurance contract is also clearly defined by an eminent authority as follows: "No rule in the interpretation of a policy is more fully established or more imperative and controlling than that which declares that in all cases it must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to the indemnity which in making the insurance it was his object to secure. When the words are without violence susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted:" May on Insurance (2nd ed.), § 175, quoted by Craig, J., in Healey *v.* Mutual Accident Ass'n (Supreme Court of Illinois), 25 N. E. Repr. 52.

Governed by the principles of interpretation of a contract of insurance just cited, we have little difficulty in concluding that Bloom's injury, as alleged in plaintiffs' statement, was external, as he took the drug or poison accidentally and unknowingly through his mouth. Did he come to his death by violent and accidental means?

"The definition of 'accident' generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens:" McGlinchy *v.* Fidelity and Casualty Co., 14 Atl. Repr. 13, 14.

An accident constitutes a dire result tragically out of proportion to its trivial cause—something unforeseen, unexpected, extraordinary—an unlooked for mishap: Lewis, Exec'x, *v.* Ocean Accident and Guaranty Corp., Ltd., 224 N. Y. 18; 7 Am. Law Reps. 1129, 1130.

Measured by the definition of "accident," which we have just quoted, can it be said that the taking of the poison by Barnett Bloom was not accidental? It is alleged that he was not aware that he was not taking the medicine prescribed by his physician; he supposed he was taking a harmless drug, calculated to make it easier for the doctor to X-ray and photograph his intestinal cavity; by mistake, he took the poison which caused his death. We think, therefore, it clearly appears from plaintiffs' statement that Bloom's death was caused by violent means, and that it was accidental.

We come next to consider whether the insured's death was caused by accidental means within the contemplation of the policy of insurance upon which this suit is brought. It was clearly his intention to protect himself against accidental injury or death by providing the competence insured to him in his contract with the defendant company in case of personal injury not resulting in death, and to provide a fund for his beneficiaries in the event of fatal accident; otherwise he would not have secured and paid for the policy issued to him by the defendant company.

It is contended by the defendant that, under paragraph "T" of its policy, "it is agreed that sunstroke, freezing, . . . blood-poison in any form, contact with gas or poisonous or infectious substances shall be classified as sickness;" that this action is based upon the paragraph of the policy insuring against accidental death, and that under another clause of the policy it was provided that "a member suffering a loss or disability for which special or specific indemnities are provided herein, shall not be entitled to any other indemnity for the same injury;" that, inasmuch as the insured came to his death by taking poison, he was entitled to indemnity, if entitled at all, under the last-quoted paragraph, and not having brought suit under that paragraph of the policy, he cannot recover in this action. With this contention we are not in accord, nor do we find the weight of the authority in this or other states sup-

porting it.  On the contrary, we find the great weight of the authorities which we have examined is in support of the contention of the plaintiffs in this case, to wit, that the insured came to his death by *external, violent and accidental means*.  We will now proceed to examine and review these authorities.

In Pickett v. Pacific Mutual Life Ins. Co., 144 Pa. 79, it was provided in the policy issued by the defendant company that "this insurance shall not cover death or injury resulting from or attributable partially or wholly to any of the following causes: Disease or bodily infirmities, . . . fits, . . . intoxication, . . . medical or surgical treatment, . . . taking of poison, . . . inhalation of gas. . . ."  The evening of the day the policy was issued the insured, in good health, went down into a well at a house where he was boarding to make repairs to a pump, and in a short time was found in the well dead from asphyxia, resulting from the inhalation of poisonous gas at the bottom of the well.  Suit was brought against the insurer by the administrator of the deceased, insured.  The insurer defended, first, because there were no visible external marks found upon the body of the deceased; and, second, that the inhalation of gas constituted accidental cause of death, against which the company did not insure.  Writing the opinion of the Supreme Court, Mr. Justice Sterrett said: "According to the undisputed facts above referred to, the death of the insured was caused by external, violent and accidental means, and without any conscious or voluntary act on his part.  No one knowing, as he did, the shallowness of the dugout portion of the well would ever suspect the presence of noxious gas therein.  Doubtless, he never for a moment contemplated the slightest danger.  His death was purely accidental; quite as much so as if he had been suddenly and unexpectedly engulfed in water and drowned.  The deadly but invisible gas by which he was unconsciously and accidentally enveloped was undoubtedly the external and violent cause of his injury and death."

Slightly paraphrasing this language and applying it to the case at bar we find, according to the undisputed facts set forth in the pleadings, the death of the insured was caused by external, violent and accidental means, and without any conscious or voluntary act on his part.  No one having confidence in his physician, as he did, would ever suspect the presence of poison in medicine administered under the physician's prescription.  Doubtless, he never for a moment contemplated the slightest danger.  His death was purely accidental; quite as much so as if he had been suddenly and unexpectedly engulfed in water and drowned.  The deadly but invisible poison which he had accidentally taken was undoubtedly the external and violent cause of his injury and death.

In the above quoted case the Supreme Court cites with approval and follows Paul v. Ins. Co., 112 N. Y. 472.  In that case the policy on which suit was brought provided that the insurance did not extend to death caused by inhaling gas.  It appeared that the insured was found dead in bed.  Gas had escaped in the room, and death was caused by breathing the atmosphere of the room filled with gas.  It was held that death was not caused by the inhaling of gas within the meaning of the policy.  Held, further, "As to the point raised by appellant that the death was not caused by external and violent means within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere as an external cause was a violent agency in the sense that it worked upon the intestate so as to cause his death.  That a death is the result of accident or is unnatural imports an external and violent agency as the cause."

3 D. & C.

*Bloom et al. v. Brotherhood Accident Company.*

In so far as Pollock *v.* Accident Ass'n, 102 Pa. 230, appears to express a different interpretation of a similar clause of a policy, it was said by Mr. Justice Sterrett in Pickett *v.* Pacific Mutual Life Ins. Co., 144 Pa. 79, 93: "In that case the injury did not result from external, violent and accidental means. The fatal drug was voluntarily and intentionally taken by the deceased. In deciding that case, this court never could have intended to lay down the broad rule that, in construing an accident policy, there is no distinction between external, violent and accidental causes of death and those cases in which death results from voluntary acts. What was decided in that case was that, under the various clauses of the policy sued on, there could be no recovery, and it was unimportant whether the means arose from the designing act of the insured or otherwise."

In Eby *v.* Travelers' Ins. Co., 258 Pa. 525, recovery was sustained where the insured came to his death from a paroxysm of coughing, caused, as was alleged, by some of the bristles of his tooth-brush finding their way into his throat while cleaning his teeth.

An accidental strain resulting in death was held to be an accidental injury within the meaning of the policy in North American Life and Accident Ins. Co. *v.* Burroughs, 69 Pa. 43.

At the oral argument of this case counsel for the defendant contended that the death of the insured was caused by "contact with poison or poisonous substances," and that, therefore, it should be construed as sickness under the contract of insurance upon which suit was brought, and not death by external, violent and accidental means. A similar defence seems to have been raised in the case of Farner *v.* Massachusetts Ins. Co., 9 Dauphin Co. Reps. 176, In this case it appeared that the insured was bitten on the thumb by a small dog and death ensued. Suit was brought for the amount due under the accident provision of the policy, and a verdict was rendered for the plaintiff. "Held, on motion for judgment *non obstante veredicto*, that death of the insured was not the result of contact with poison or with poisonous or infectious substances within the meaning of the policy, and judgment was entered on the verdict." Per Kunkel, P. J.

In Eggenberger *v.* Guaranty Mutual Accident Ass'n, 41 Fed. Repr. 172, it was held:

"Under a certificate of accident insurance providing that it 'shall not extend to injuries of which there is no visible mark on the body of the insured,' nor to the death resulting from various causes, the company is liable in case of accidental death though there was no visible mark of the injury on the body."

Held, further, that the "visible mark upon the body of the insured" was only required to exist in case of bodily injuries which did not result in death.

In McGlinchy *v.* Fidelity and Casualty Co. (Supreme Court of Maine), 14 Atl. Repr. 13, it appeared that one insured against accidents was driving upon a public street when his horse became frightened at an unsightly object and ran away, without upsetting the carriage or coming in contact with anything, and was at length brought under control; but the insured was apparently greatly endangered at the time and suffered so severely, either from fright or strain caused by his physical exertion in restraining the horse, that he died within an hour afterwards. Held: "That the death ensued from bodily injuries effected through external, violent and accidental means." Held, further: "The clause which provides that the insurance shall not extend to any bodily injury of which there shall be no external and visible signs upon the body of the insured does not apply to fatal injuries, but only to those not resulting in death. . . ."

We quote from the language of Chief Justice Peters in this case that: "The efficient, true cause, dominating all other causes in the combination, was the misbehavior of the running horse. Subsequent occurrences were merely the instrumentalities through which the real cause spent its force. The act of the horse was the beginning; death was the end."

Slightly paraphrasing this language and applying it to the case at bar, it is alleged that the efficient, true cause, dominating all other causes in the combination, was the taking by the insured of the medicine prescribed by Dr. Ritzman, which prescription the druggist mistakenly filled by giving to the deceased a poisonous drug. Subsequent occurrences were merely the instrumentalities through which the real cause spent its force. The taking of the poison accidentally and mistakenly furnished to the deceased by the druggist was the beginning; death was the end.

In American Accident Co. of Louisville *v.* Reigart (Court of Appeals of Kentucky), 23 S. W. Repr. 191, it was held: "Where an accident insurance policy is, by its terms, made payable in case of death 'received through external, violent and accidental means,' the intent is that the means, or that which caused the injury, should be external, and not that the injury must be external."

In this case the insured choked to death while attempting to swallow a piece of beefsteak which accidentally lodged in his windpipe. It was held that death resulted from "violent and accidental means" within the meaning of the conditions of such policy. It was further held no construction should be placed on an accident insurance contract that would defeat the intention of both parties to it. Mr. Justice Pryor, writing the opinion of the Supreme Court of Kentucky, cites with approval Healy *v.* Mutual Accident Ass'n, 133 Ill. 556; 25 N. E. Repr. 52.

In the last quoted case it was held by the Supreme Court of Illinois that: "Death resulting from the accidental taking of poison creates a liability under the policy insuring against death caused by external, violent and accidental means."

Craig, J., writing the opinion of the Supreme Court of Illinois, cites Paul *v.* Ins. Co., 112 N. Y. 472. Criticising Pollock *v.* Accident Ass'n, 102 Pa. 230, Judge Craig said (25 N. E. Repr. 54): "But while we recognize the high ability of the court in which the case was decided, we are not disposed to follow the rule there adopted. We think the rule established by the Court of Appeals of New York is better calculated to carry out the true intention of the parties where the contract of insurance was entered into, and one, too, more nearly in harmony with the current of authority bearing on the case."

Evidently the decision of the Supreme Court of Pennsylvania in Pickett *v.* Pacific Mutual Life Insurance Company was not brought to the attention of the Supreme Court of Illinois at the time Healy v. Mutual Accident Association was being considered.

The Michigan Supreme Court, in Johnson *v.* Fidelity and Casualty Co. of New York, 151 N. W. Repr. 593, L. R. A. 1916-*a*, page 475, held: "Death by ptomaine poisoning, due to partaking of tainted food by mistake, is within the terms of a policy insuring against death by accident."

In Lewis, Exec'x, *v.* Ocean Accident and Guaranty Corp., Ltd., 224 N. Y. 18, 7 Am. Law Reps. 1129, it was held, "death from inflammation of the brain, caused by infection due to voluntarily puncturing a pimple on the lip," was within a policy insuring against loss resulting from bodily injuries effected solely through accidental means.

3 D. & C.

Bloom et al. *v.* Brotherhood Accident Company.

In Freeman *v.* Mercantile Mutual Accident Ass'n (Massachusetts Supreme Judicial Court), 17 L. R. A. 753, suit was brought to recover for the death of the insured upon a policy which entitled the beneficiary of the insured to payment upon proofs that the insured shall have sustained during the continuance of his membership bodily injury effected through external, violent and accidental means, within the intent and meaning of the by-laws of the defendant association, where such injury alone shall have occasioned death within ninety days from the happening thereof; and providing, further, that benefits under the certificate shall not extend to any case in which there shall be no symptom or visible sign or bodily injury, nor to any case in which death or disability occurs in consequence of disease, or which may have been caused by any surgical operation or medicinal or mechanical treatment; . . . nor to any case except where the injury is the proximate cause of disability or death. The insured came to his death by peritonitis, caused by an accidental fall. Held, his beneficiary was entitled to recover.

In the case at bar it is not provided in the policy, which constitutes the contract between the insured and the company defendant, that it shall be relieved from liability in the event that the insured *takes poison;* it only stipulates that disability, caused by *"contact with gas or poisonous or infectious substances; . . . shall be classified as sickness,"* and, therefore, it can find no relief in the decision of the Supreme Court in Pollock *v.* Accident Ass'n, 102 Pa. 230. "Contact with poison, or with poisonous or infectious substances, in the ordinary sense, means contact with corporeal matter with that which is substance, as distinguished from that which can neither be seen or handled. Poison, or poisonous or infectious substances also, ordinarily mean substances that are in their nature poisonous or infectious, and that are generally recognized as such:" Farner *v.* Massachusetts Ins. Co., 9 Dauphin Co. Reps. 176.

We do not think that the taking of poison accidentally and involuntarily can be construed to mean contact with poisonous substances.

Jones *v.* Hawkeye Commercial Men's Ass'n, 184 Iowa, 1299, 11 Am. Law Reps. 380, appears to express a contrary doctrine to that of the authorities we have quoted; but, after reading the dissenting opinion of Judge Weaver, we are of the opinion that the weight of the authority and the logic of reasoning are all with the dissenting opinion.

After carefully considering the great weight of the authority upon the questions raised by the defendant, we are not convinced that its contention is sound. We hold that, under the facts averred in plaintiffs' statement, Morris Bloom came to his death by external, violent and accidental means, which alone caused his death within ninety days from the date of the accident. We cannot agree that this case is controlled by paragraph "T" of the contract between the defendant and Morris Bloom, which provides, *inter alia,* that the accident which caused his death resulted from "contact with gas or poisonous or infectious substances."

We conclude that the statement of claim filed by the plaintiff shows a sufficient cause of action, and, therefore, the motion of the defendant that judgment be entered in its favor must be and the same is hereby overruled. The defendant is directed to file an affidavit of defence within fifteen days.

From William Jenkins Wilcox, Harrisburg, Pa.