## Snyder *v.* Globe Mutual Live Stock Insurance Company, Appellant.

*Insurance—Live stock insurance—Policy—Attaching by-laws to policy— Act of May* 11, 1881, *P. L.* 20.

1. An application by a member of a mutual live stock insurance company for insurance of an animal, and the indorsement of the application "approved," without anything to indicate the amount of the insurance, is not a policy of insurance within the meaning of the Act of May 11, 1881, P. L. 20, even if that act applied to live stock insurance.

2. The Act of May 11, 1881, P. L. 20, requiring the application and by-laws to be attached to a policy of insurance in order to make such papers admissible in evidence, has no application to policies of insurance issued by a live stock insurance company.

Argued Dec. 8, 1908. Appeal, No. 241, Oct. T., 1908, by defendant, from judgment of C. P. Northampton Co., Feb. T., 1907, No. 53, on verdict for plaintiff in case of Lewis F. Snyder v. Globe Mutual Live Stock Insurance Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a contract of live stock insurance. Before STEWART, J.

624 SNYDER *v.* GLOBE MUT. L. S. INS. CO., Appellant.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant offered in evidence the by-laws of the defendant company. Objection was made by the plaintiff, and the objection sustained. [8–12]

Defendant presented the following points:

1. Plaintiff having become a member of the mutual association defendant on November 28, 1904, is bound to comply with the by-laws adopted by the said association. *Answer:* That is true so far as his membership with the association is concerned; but it is refused so far as the special contract is concerned. [1]

2. If the jury believe from the evidence that the plaintiff on October 8, 1905, had a black horse valued at $250 insured by the defendant association against death in class "B;" that on January 2, 1906, the board of directors of the defendant association laid assessment No. 41 of one per cent upon all the members of said class "B" to cover loss arising in the said class; that the plaintiff under said resolution was assessed the sum of $81.85 upon the different certificates held by him in said class; and that notice was mailed on February 19, 1906, of said assessment No. 41 to him, then it became his duty under the by-laws as a member of the said class to pay said assessment within thirty days from February 19, 1906. If the jury further believe from the evidence that the plaintiff did not pay the said assessment until March 24, 1906, that is, more than thirty days after the sending of notice of the said assessment, then the plaintiff was in arrears and under the by-laws of the association insurance on the said black horse was suspended until April 6, 1906, that is, ten days after the payment of the assessment. *Answer:* That point is refused. I say that that ten days' clause has no reference to this contract. [2]

3. If the jury believe that the black horse for whose death indemnity is claimed in this suit became sick on March 24, 1906, and remained sick for a week or ten days and died of such sickness on April 2, 1906, then the plaintiff cannot under the by-laws recover and the verdict must be for the defendant. *Answer:* That point is refused. [3]

4. Under all the evidence the verdict must be for the defend-

ant. *Answer:* That point is refused. I submit the question as to whether he was guilty of fraud to you. [4]

5. If the plaintiff on March 24, 1906, after the horse was sick with the disease from which he afterwards died, sent his check for the amount of his assessment, which was at that time known by him to be overdue, and his insurance lapsed, and the secretary of the company accepted his check, ignorant of the fact that the horse was sick at that time, the plaintiff was guilty of such an act of fraud upon the company that he cannot recover in this action. *Answer:* That point is refused. I submit the case to you. [5]

Verdict and judgment for plaintiff for $204.37. Defendant appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them, and (8–12) rulings on evidence, quoting the bill of exceptions.

*James L. Schaadt*, with him *James T. Woodring*, for appellant.—There was no contract of insurance shown: Hamilton v. Lycoming Mut. Ins. Co., 5 Pa. 339; Schaffer v. Mutual Fire Ins. Co., 89 Pa. 296; Mutual Fire Ins. Co. v. Elkins, 124 Pa. 484; Mut. Live Stock Ins. Co. v. Dutton, 6 Del. Co. Rep. 148; Standard Life and Accident Ins. Co. v. Carroll, 86 Fed. Repr. 567.

An oral contract of insurance ought to be proved clearly beyond a doubt; the full extent and limit of it ought to be ascertained by unexceptional evidence: Smith v. State Ins. Co., 58 Iowa, 487 (12 N. W. Repr. 542); Smith v. Odlin, 4 Yeates, 468; Keystone Mattress, etc., Co. v. Pittsburg Underwriters, 21 Pa. Superior Ct. 42.

*Edgar C. Nagle*, for appellee.—To grant indemnity or security against loss for a consideration, is not only the design and purpose of an insurance company, but is also the dominant characteristic feature of the contract of insurance: Com. v. Beneficial Association, 137 Pa. 412. Such a contract may be entirely in parol: Hamilton v. Lycoming Mutual Insurance

Co., 5 Pa. 339. Or it may be a mere memorandum and receipt as in State Fire and Marine Insurance Co. v. Porter, 3 Grant, 123.

As long as a contract of insurance specifies the subject-matter, the risk insured against, either expressly or by implication, the amount insured, the duration of the risk and the consideration, it is such a contract of insurance as will entitle the plaintiff to recover: Keystone Mattress, etc., Co. v. Pittsburg Underwriters, 21 Pa. Superior Ct. 42.

The court did not err in excluding the by-laws of the defendant company as evidence in this case: Mut. Live Stock Ins. Co. v. Dutton, 6 Del. Co. Rep. 148; Standard Life & Accident Co. v. Carroll, 86 Fed. Repr. 567; Zimmer v. Central Accident Ins. Co., 207 Pa. 472; New Era Life Assn. v. Musser, 120 Pa. 384; Pickett v. Pacific Mutual Life Ins. Co., 144 Pa. 79; Morris v. Life Assurance Co., 183 Pa. 563; Fisher v. Life Association, 188 Pa. 1; Norristown Title, etc., Co. v. John Hancock Mutual Life Ins. Co., 132 Pa. 385.

Opinion by Morrison, J., March 8, 1909:

This case came into the court below by appeal from the judgment of a justice of the peace, in favor of the plaintiff. On trial before the court and a jury, there was a verdict in favor of the plaintiff for $204.37, and the court having discharged the rule for judgment in favor of the defendant non obstante veredicto, and refused a new trial, judgment was entered on the verdict and therefore this appeal.

The appellant's statement of the questions involved brings at once before us the important and controlling points in the case: " (a) Does an application by the member of a mutual live stock insurance company, for insurance of an animal and the indorsement of the application, 'approved,' constitute more than a parol contract of insurance? (b) The member in consideration of such acceptance agreeing to comply with the by-laws of the company adopted by himself and fellow members, do the by-laws become a necessary, essential part of such parol contract, to be received in evidence without being 'attached to and accompanying' the application? (c) Is such an appli-

cation, so accepted, a 'policy,' within the meaning of the Act of May 11, 1881, P. L. 20?"

It appears that the defendant company was incorporated on April 29, 1887, for the insurance of horses and cattle against death, upon the mutual plan. The corporation has no capital stock; has made no profit; paid no dividends and levied only so much money in the twenty years of its existence as was required for the payment of the losses of its members. The plaintiff became a member of the corporation on November 28, 1904. From time to time he applied for and received insurance until at one time he had nearly 100 horses insured. At the annual meeting on January 7, 1905, the members of the corporation adopted the following by-law: "The face of the assessment is to be paid in the home office within thirty days after the date of notice. If not paid at the expiration of thirty days, ten per cent will be added for the purpose of defraying expenses for collection and insurance shall be suspended and remain suspended for a period of ten days, after all assessments are paid. If not paid in ninety days, the tax shall be collected by legal process, and all interests in the company shall be forfeited and membership and insurance may be canceled by action of the board of directors. An animal not in good health at the time of suspension cannot be reinstated until its health is reestablished."

On October 8, 1905, the plaintiff applied for insurance of a black horse, with white star, paying fifty cents to the inspector taking the application. In his application plaintiff agreed that the application, with the statements made by him, should form the basis of the contract between him and the association, and further agreed that if any of the statements made by him should be untrue, or if he should neglect to pay the assessments on or before the day they fall due, or if he should fail to comply with the by-laws and regulations governing the company, that then the contract should become null and void. The application was approved the same day by the secretary and a duplicate of the application so indorsed and marked No. 93, whole number 4,693, sent to plaintiff. Following the custom of the association, no policy or other written evidence of the insurance

was issued to plaintiff. On January 1, 1906, an assessment (No. 41) of $1.00 upon every $100 of insurance was laid by the board of directors to cover the losses which occurred during the preceding three months. Plaintiff's assessment upon the insurance held by him was $81.85. Notice of the assessment was mailed to him on February 19, 1906, and the thirty days allowed to him to pay said assessment expired on March 21, 1906, without his having paid it. On March 23, 1906, a black horse belonging to plaintiff, and which he claimed to be the animal insured under certificate No. 4,693, was taken sick with pneumonia. A veterinary was called in on the next day and he treated the horse until it died. On March 24, 1906, knowing that the horse was sick, and without notifying the association of its sickness, plaintiff mailed a check to the defendant's office for $81.85 in payment of assessment No. 41, then three days overdue. A letter inclosing the check shows that plaintiff knew that he had not paid the assessment within the prescribed time. The check was received by the secretary of the association on March 26, 1906. The horse took sick on March 23, 1906, at a time when plaintiff's insurance thereon was suspended by reason of his failure to pay assessment No. 41. The horse died on April 2, 1906, within the penalty period of ten days, from March 26, the day on which plaintiff paid the assessment.

An examination of plaintiff's exhibit No. 2, being his application for insurance on the black horse, and which the learned court below construed to be an insurance policy, shows that it is merely an application for insurance, approved on October 8, 1905, by H. S. Funk, secretary. It is utterly impossible for us to construe this paper, standing alone, as an insurance policy or contract, which can be enforced without parol testimony. Nowhere within its four corners does it state the amount of insurance, nor when to be paid. It is not clear from this paper whether it is an insurance against loss by sickness and death or loss by theft, or both. There is on this paper an estimated value of the horse, in figures, $250. In this application the plaintiff agrees to be bound by the by-laws and regulations governing said company and in case he fails or neglects to comply with the same, the contract shall become null and void.

On the back of this application there appears, along with the filing, the indorsement "Amount of Insurance $250.00." But this is not signed by anybody, and there is absolutely nothing in or on the paper showing that the company undertook to pay $250 for the loss of the insured horse. But by the offer of parol testimony and the by-laws of the company in evidence, along with this application, the plaintiff could have shown that the company was obligated to pay to the plaintiff three-fourths of the true and actual market value of the horse if he died or was stolen, and not recovered, while the insurance was in force, but it is very clear that the plaintiff, a member of this mutual company, must comply with the by-laws, rules and regulations of his company in order to keep his insurance in force. The fundamental error running through the trial of this case was, in our opinion, the ruling of the court below that the by-laws and rules and regulations of the company could not go in evidence because they were not attached to and accompanying the application. The learned court necessarily took this view in order to bring the case within the provisions of the Act of May 11, 1881, P. L. 20. To accomplish this the court was compelled to treat this application as a contract or policy of insurance. But we have already seen that it is not a complete contract of insurance and that the plaintiff could not recover upon it without additional evidence to complete his insurance contract. The act of May 11, 1881, provides: "That all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and, unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application

or by-laws be considered a part of the policy or contract between such parties." The court below held that the application was an insurance policy or contract and refused to allow any by-laws, rules or regulations of the company to go in evidence because of the provisions of the act of 1881 above quoted.

The learned judge in his opinion refusing a new trial and discharging the rule for judgment in favor of the defendant non obstante veredicto, contends and cites ample authority for the proposition that an insurance contract may be in parol. There is no doubt about the soundness of this position. The difficulty in the present case is that the plaintiff could not make out his case without testimony outside of the written and printed application and, if he was relying on a parol contract, it is impossible for us to see why all of the evidence bearing on that contract was not competent. The plaintiff, in his application, referred to the by-laws and regulations governing the company, of which he was a member, and unless there was an insurance policy in this case, within the meaning of the act of 1881, it is not apparent how that act can be invoked to exclude the by-laws and regulations of the company which were confessedly made a part of the contract of insurance by the plaintiff, himself, in his application, treated by the court as a policy of insurance. Note the language of the act of 1881 with its title "Relating to life and fire insurance policies. That all life and fire insurance policies upon the lives or property of persons within this Commonwealth, etc.," it seems to us that the legislative intent here embraces life insurance policies issued on human beings and fire insurance policies issued upon the property of persons within this commonwealth. The court below seems to understand the case of Zimmer v. Accident Ins. Co., 207 Pa. 472, to warrant him in holding that the act of 1881 applies in the present case. We do not so understand that decision, nor do we understand it to controvert ACHESON, J., in Standard Life and Accident Ins. Co. v. Carroll, 86 Fed. Repr. 567, in which that judge says, referring to the act of 1881: "At the date of this act there was, and still is, in Pennsylvania, a legislative classification of insurance. The Act of May 1, 1876, P. L. 53, provides for the incorporation of four different kinds of insur-

ance corporations: first, to make insurance upon fire and marine risks; second, to make insurance upon lives; third, to make insurance upon health and against accidents; and fourth, to make insurance upon live stock. And the act contains distinctive provisions applicable to these several classes of insurance companies." And Judge ACHESON concludes that the act of May 11, 1881, applies only to the first two classes, fire and life insurance policies, and not to accident insurance companies. This was followed in the same court in 1899 by National Accident Society of New York v. Dolph, 94 Fed. Repr. 743. Now Zimmer v. Accident Ins. Co., 207 Pa. 472, does not refuse to follow the classification and conclusion of Judge ACHESON, as we understand that case. The opinion of Mr. Justice BROWN distinguishes his case by calling attention to it in this language: "And why is not the present policy a life insurance policy? It insures not only against accidents, but against loss of life as well, when caused by accident, and is it any less a life insurance policy because its indemnity for loss of life is confined to death from accident?" It is clear from Justice BROWN's language, that the Zimmer policy is controlled by the act of 1881 because it was insurance upon the life of a person. Mr. Justice BROWN expressly says that the policy in that case insured not only against accidents, but against loss of life as well. This does not seem to disagree with Judge ACHESON's conclusion.

We do not understand the Supreme Court to decide that a purely accident insurance policy must have a copy of the application and by-laws attached to it to make them admissible in evidence. We do not think the Zimmer case sustains the learned court below in excluding the by-laws in the present case.

We have examined a large number of Supreme Court cases holding that the act of 1881 applied, but they are all either life or fire insurance policies. Among these cases are Pickett v. Ins. Co., 144 Pa. 79; Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460; New Era Life Assn. v. Musser, 120 Pa. 384; Hebb v. Ins. Co., 138 Pa. 174, and Norristown Title, Trust, etc., Co. v. Ins. Co., 132 Pa. 385.

After a somewhat thorough examination of the cases we find

no controlling authority requiring us to hold that the act of 1881 warranted the court below in excluding the by-laws of the defendant corporation in the present case. This because there was no life or fire insurance policy within the meaning of that act, and, second, because the plaintiff did not have an insurance policy upon which he could recover without parol evidence, and the relevant, competent and best evidence ought to have been admitted.

The learned counsel for the plaintiff objected to and succeeded in having the learned court exclude material and competent evidence, the by-laws of the defendant company, and as the case stood when it went to the jury, the court ought to have affirmed the defendant's fourth point (fourth assignment): "Under all the evidence the verdict must be for the defendant." For this reason the learned judge erred in not granting judgment for the defendant non obstante veredicto on the reserved question, "Whether there is any evidence of facts under which the plaintiff is entitled to recover." This view of the case renders it unnecessary for us to discuss the other assignments of error.

The judgment is reversed and we here enter judgment in favor of the defendant non obstante veredicto.