# Robson *v.* Pennsylvania Mutual Live Stock Insurance Company, Appellant.

*Insurance—Live stock insurance—Age of animal—Mistake—Health of animal.*

1. Where a person about to insure a horse states to the agent that the horse was fifteen years old and exhibits to him a bill in which the age of the horse is correctly given, but the company in writing the policy by mistake states the age as fourteen, the policy is not thereby rendered invalid so as to enable the company to profit by its own carelessness.

2. In an action upon a policy of live stock insurance the trial judge

cannot be convicted of error in refusing to charge that "if at the time the policy went into effect the animal insured was not in good health, or was unsound, or diseased, then there can be no recovery," where the policy provides that "the company will not be liable for the death of any animal resulting from sickness or disease contracted or accident occurring prior to or upon the day of the issue of the policy." Such a point is too broad, and could not be affirmed unless it is shown that the unsoundness was such as was embraced in the words "sickness or disease," and furthermore that the death resulted from such unsoundness.

3. In an action upon a live stock policy which provides for notice to the company of the sickness of the animal, the court cannot say as a matter of law that the fact that the insured did not give notice of the development of nodules on the legs of a horse, invalidated the policy, where the evidence showed that the horse was in good health, and was used to within three days prior to his death, and that a horse in such a condition might render services for a long period. The question whether the horse was suffering from a sickness within the meaning of the policy is for the jury.

4. In such a case the failure to mention in the proof of loss the fact that the horse had nodules on his legs was not such a fraud as to work forfeiture of all claims under the policy.

*Insurance—Live stock insurance—Attaching application to policy— Act of May 11, 1881, P. L. 20.*

5. A policy of live stock insurance which insures an animal not only against a loss by death from natural causes, but also against a loss by fire, is within the operation of the Act of May 11, 1881, P. L. 20, which provides for the attaching of the application to the policy as essential to the application being received in evidence.

Argued April 13, 1914. Appeal, No. 81, April T., 1914, by defendant, from judgment of C. P. Erie Co., Sept. T., 1911, No. 192, on verdict for plaintiff in case of H. L. Robson v. Pennsylvania Mutual Live Stock Insurance Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit upon a policy of live stock insurance.

At the trial it appeared that on June 13, 1910, defendant issued to the plaintiff a policy insuring a horse for the amount of $500. The horse died in March, 1911.

The policy stated that the age of the horse was fourteen years.  Its actual age was fifteen years.  The evidence showed that the plaintiff had correctly stated the age, but a mistake had been made by the company in writing the policy.  The risk covered by the policy was "loss by death from accident or disease and fire or lightning."

The defendant offered in evidence the application.

The Court: The alleged application not having been signed by the assured and no copy thereof being attached to the policy, the application in our opinion is not competent evidence and it is rejected and an exception sealed for the defendant. [6]

The court charged in part as follows:

[If the agent had correct information as to the age of the horse and then accidentally or otherwise misstated it in the policy, that would not defeat the right of the plaintiff.  If he gave the information right and the fact that it is wrong in the policy is the result of accident or the act of the agent, then the man who got his horse insured would not be to blame.] [2]

Defendant presented this point:

9. If at the time the policy went into effect the animal insured was not in good health, or was unsound or diseased, then there can be no recovery, and your verdict must be for the defendant.  *Answer:* That point is refused.  I believe that the fact the horse might be unsound would not be a defense. [3]

Verdict for plaintiff for $547.33 upon which judgment was entered for $250, all above that amount having been remitted.  Defendant appealed.

*Errors assigned* were (6) ruling on evidence, quoting the bill of exceptions, and (2, 3) above instructions, quoting them.

*J. Orin Wait*, for appellant.—When a policy requires immediate notice of sickness or accident, etc., and pro-

vides that failure to give it shall avoid the policy, no recovery can be had if there has been a violation of this condition: Illinois Live Stock Ins. Co. v. Kirkpatrick, 61 Ill. App. 74; Green v. N. W. Live Stock Ins. Co., 87 Ia. 358; Allston v. North Western Live Stock Ins. Co., 7 Kas. App. 179; Johnston v. North Western Live Stock Ins. Co., 107 Wis. 337; Coventry, etc., Ins. Co. v. Evans, 102 Pa. 281; Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314.

The plaintiff received the policy of insurance, giving the age of the horse as fourteen years, a few days after it was issued, on June 13, 1910. The horse died on February 15 or 16, 1911. The plaintiff therefore had this policy in his possession about eight months without notifying the company that the true age of the horse was fifteen years instead of fourteen years, as given in the policy: Flynn v. People's Live Stock Ins. Co., 4 Pa. Superior Ct. 137; Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314; American Ins. Co. v. Judge, 191 Pa. 484; Swan v. Watertown F. Ins. Co., 96 Pa. 37.

We believe that the court erred in refusing defendant's second and third points and in excluding from the evidence the application of insurance. The Act of May 11, 1881, P. L. 20, does not apply to policies of insurance issued by live stock insurance companies: Standard Life & Acct. Co. v. Carroll, 86 Fed. Repr. 567.

In the case at bar the mere fact that the policy provides against loss by death caused by (fire and lightning) as well as by accident and disease of the live stock insured does not make the instrument a fire insurance policy either in a popular or in a legal sense: Carrigan v. Mas. Ben. Assn., 18 Phila. 528.

*G. T. Kincaid,* of *Kincaid & Kincaid,* for appellee.— "The condition of the health of the insured when the policy was issued was essentially and entirely a question of fact to be decided under the evidence and involving the credibility of witnesses:" Swartz v. Metropolitan

Life Ins. Co., 5 Pa. Superior Ct. 285; Dietz v. Metropolitan Life Ins. Co., 168 Pa. 504; Fidelity T. & T. Co. v. Illinois Life Ins. Co., 213 Pa. 427; Horne v. John Hancock M. L. I. Co., 53 Pa. Superior Ct. 330; Swartz v. Ins. Co., 5 Pa. Superior Ct. 285.

"If the agent had correct information as to the age of the horse and then accidentally or otherwise misstated it in the policy, that would not defeat the right of the plaintiff:" People's Ins. Co. v. Spencer, 53 Pa. 353; Damms v. Humboldt Fire Ins. Co., 226 Pa. 358; Clymer Opera Co. v. Flood City Mut. Fire Ins. Co., 238 Pa. 137; Clymer Opera Co. v. Birmingham Fire Ins. Co., 50 Pa. Superior Ct. 639; Phila. Tool Co. v. British Am. Assurance Co., 132 Pa. 236; Eilenberger v. Protective M. Fire Ins. Co., 89 Pa. 464.

The Act of May 11, 1881, P. L. 20, applies: Zimmer v. Central Accident Ins. Co., 207 Pa. 472; New Era Life Assn. v. Musser, 120 Pa. 384; Ellis v. Metropolitan Life Ins. Co., 228 Pa. 230; Snyder v. Globe Mut. L. S. Ins. Co., 38 Pa. Superior Ct. 623.

OPINION BY TREXLER, J., July 15, 1914:

The plaintiff was the owner of a stallion which defendant insured for the term of one year. The policy covered death from accident, disease or fire. The animal having died and suit having been brought on the policy, defendant company set up various matters on defense which we are now required to consider. They are as follows:

1. That there was a mistake in the policy as to the age of the horse. At the time the insurance was effected the horse was fifteen years of age. In the policy the age is stated as fourteen. The question of age is material to the risk: March v. Metropolitan Life Insurance Co., 186 Pa. 629; Dinan v. Benefit Association, 201 Pa. 363. The uncontradicted testimony in the case is to the effect that the horse's age was correctly stated by the insured and the agent's attention was directed to a bill on which

the age of the horse was correctly given. The age was incorrectly stated in the policy. This was due to a mistake of some officer of the company, or the stenographer writing the policy. We are now asked to visit the effect of the mistake upon the insured and thus enable the company to profit by its own carelessness. The decisions do not require us so to do. In Damms v. Humboldt F. Insurance Co., 226 Pa. 358, it was held that where the company knows that one of the conditions of the policy is inconsistent with the facts and the insured is not guilty of fraud the company is estopped. Where a mistake is clearly chargeable, not to the insured, but to the company's agent it should be imputed to the company itself. For example, where the applicant for life insurance correctly informs the agent of other policies on his life and the agent by mistake fails to mention them and the application is signed by the insured and not read, the company is bound: Mullen v. Union Central Life Ins. Co., 182 Pa. 150.

There are a number of cases supporting the general proposition above advanced. We cite the following: Caldwell v. Fire Association, 177 Pa. 492; Clymer Opera Co. v. Flood City Mutual Fire Ins. Co., 238 Pa. 137; Porter v. Insurance Co. of North America, 29 Pa. Super. Ct. 75; Exchange Mutual Fire Insurance Co. v. Consolidated Mutual Fire Ins. Co., 46 Pa. Super. Ct. 601; Philadelphia Tool Co. v. British Am. Assurance Co., 132 Pa. 236; Eilenberger v. Protective Mutual Fire Ins. Co., 89 Pa. 464; Zimmer v. Central Accident Ins. Co., 207 Pa. 472.

2. That the court erred in refusing to affirm the proposition of the defendant, that "if at the time the policy went into effect the animal insured was not in good health, or was unsound, or diseased, then there can be no recovery." The point was too broad. The language of the contract of insurance is as follows, "The company will not be liable for the death of any animal resulting from sickness or disease contracted or accident occurring prior to or upon the day of the issue of the

policy." To affirm this point it had to appear and the fact must have been covered in the proposition that the unsoundness was such as embraced in the words, "sickness or disease" and furthermore that the death resulted from it. The court was right in declining the proposition.

3. That the court erred in excluding the application and the portion of the application contained on the back of the policy. The reason for the refusal of the court to receive this evidence was that the application was not signed by the insured; that no copy was attached to the policy and that therefore the application was not competent evidence under the Act of May 11, 1881, P. L. 20. The undisputed testimony in the case shows that there was no application made out or signed by the insured and that he had no knowledge of its existence. Who wrote out the application does not definitely appear, but the company's agent testified that the contents were not made known to the plaintiff. The defendant argues, however, that the part of the application set out on the reverse of the policy was binding on the plaintiff because he had possession of the policy and after a reasonable time was chargeable with knowledge of its contents, citing Swan v. Watertown Fire Insurance Co., 96 Pa. 37. If we conclude that the Act of May 11, 1881, P. L. 20, applies, the court properly excluded the application. The portion of the application upon the back of the policy would also be necessarily excluded for it was not "a correct copy of the application as signed by the applicant." The act of May 11, 1881, provides as follows: "That all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company either as forming part of the policy or contract between the parties thereto, or

having any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties." In Standard Life & Accident Ins. Co. v. Carrol, 86 Fed. Rep. 567, ACHESON, J., held that the act of 1881 applied only to the first and second classes of insurance companies set forth in the Act of May 1, 1876, P. L. 53, to wit: To fire insurance companies and to life insurance companies and not to health or accident or to live stock companies. It was pointed out by Justice BROWN in Zimmer v. Central Accident Ins. Co., 207 Pa. 472, that the act of 1876 refers to companies, while the act of 1881 applies to policies. Having this distinction in view it was there held that insurance against accident which also covered loss of life by accident came within the act of 1881. The language of the act as stated before, "life and fire insurance policies upon the lives or property of persons" would not apply to a policy covering the death of a horse from natural causes only. The terms of the act are not broad enough to cover such a loss: Snyder v. Globe Mutual Live Stock Ins. Co., 38 Pa. Super. Ct. 623. When, however, the policy as in this case also provides for the payment for the loss of a horse when destroyed by fire then we think the act applies. The policy is insurance against fire and covers "property of persons." It matters not what is the name usually given to such insurance policy. The extent of the terms of the policy determines its status under the law. The act was passed to remedy an existing evil. The abuse to be corrected was liable to occur in connection with all kinds of insurance policies. It is a wise and beneficent act: New Era Life Ass'n

v. Musser, 120 Pa. 384.   We, therefore, should not give the act a restricted meaning but should construe it liberally.   We think it applies to the policy before us.

4. During the life of the policy nodules developed on the stallion's legs which were examined by a veterinarian, who reported that the horse was suffering from epizoötic lymphangitis, a disease of dangerously infectious and virulent character.   The policy provides, "This company will not be liable if the insured in case of sickness or accident to the animal or animals hereby insured shall fail to render at once notice, to the secretary of the company, of such sickness or accident, or fail to immediately employ a duly registered and licensed veterinary for the same and promptly furnish his name and address to the company."   Was the condition of the stallion such as to require the insured to report the facts to the company?   The testimony in the case shows that, notwithstanding these lumps upon the stallion, he continued as active as ever and was used for breeding purposes up to within three days prior to his death. Several witnesses, one a veterinarian, testified that the horse was in good health.   The veterinarian, who testified to the sickness of the animal admitted that in the condition in which he found the horse, he might render services little less than normal for months and in some cases for years.   The learned judge left it to the jury to determine whether or not the horse was sick.   Was the diseased condition of the legs such as to render the horse sick?   Under conflicting testimony the court could not very well do anything but leave this question to the jury.   There is undoubtedly a distinction between a disease which might affect some portion of the body and a general condition which causes sickness.   Sickness is usually employed as a synonym to ill health.   Many of the minor physical ailments are due to a diseased condition of some portion of the body and the general health nevertheless may remain good.   Illness is a disorder of health; a disease or ailment of such a character

as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine or weaken the constitution of a person: 21 Cyc. 1728. Sickness does not include any slight ill in no way seriously affecting the applicant's health or interfering with his usual avocations: 36 Cyc. 436. A statement in the revival application that the insured has not during the period covered thereby "been sick or afflicted with disease," was not necessarily to be inferred to be false from the fact that the insured had "a cold:" 9 Am. and Eng. Ency. of Law (2d ed.), 475n., and other cases there cited. Whether the disorder that the horse had was such as came within the terms of the policy and was in contemplation of the parties was for the jury: Home Mutual Life Association v. Gillespie, 110 Pa. 84. We conclude the court was right in the position he took in this regard.

5. The next and last question is whether the failure to mention in the proof of loss the fact that the stallion had nodules on his legs was "fraud, or attempted fraud by false swearing or otherwise, so as to work a forfeiture of all claims under the policy." The court was right in refusing to adopt this view. The cause of the death was uncertain. There was nothing in the case to show that the failure to mention the above fact was willful and deliberate false swearing with a view to defraud the company. In fact the circumstances indicate otherwise. See Franklin Fire Ins. Co. v. Updegraff, 43 Pa. 350; Post v. Am. Central Insurance Company, 51 Pa. Super. Ct. 352 (360).

Having sustained the views of the lower court as to matters above set forth it will not be necessary for us to consider the assignments which complain of the failure of the court to enter judgment for the defendant n. o. v.

All of the assignments of error are overruled. Judgment affirmed.