NATIONAL MASONIC ACC. ASS'N OF DES MOINES v. SHRYOCK.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1896.)

No. 677.

1. ACCIDENT INSURANCE—CONSTRUCTION OF POLICY—BURDEN OF PROOF.
    Under a policy promising indemnity in case death results solely because of bodily injuries effected by external, violent, and accidental means, and independently of all other causes, the burden of proof is on those claiming under the policy to show that the accident was the sole cause of death, independently of all other causes.

2. SAME—DEATH FROM ACCIDENT COMBINED WITH DISEASE.
    Under such a policy, the insurer would not be liable if, at the time of the accident, insured was suffering from a pre-existing disease, and death would not have resulted from the accident in the absence of such disease, but insured died because the accident aggravated the effects of the disease, or the disease the effects of the accident.

3. REVIEW ON ERROR—SUFFICIENCY OF EVIDENCE—RECORD.
    The sufficiency of the evidence to sustain the verdict cannot be considered when the record discloses that only a portion of the evidence is included in the bill of exceptions, nor will a certificate that the substance of the evidence is returned warrant the court in considering that question.

4. HEARSAY EVIDENCE—PUBLIC POLICY—DISCRETION OF COURT.
    The rule that hearsay testimony is incompetent to prove a past occurrence rests upon settled principles, the maintenance of which is essential to the preservation of personal liberty and property rights. The enforcement of this rule is not discretionary with the trial court, and its violation is fatal error.

5. SAME—DECLARATION—RES GESTÆ.
    Declarations made by a person since deceased, two hours after an injury from a fall in a street, and not at the scene of the accident, but while engaged in his ordinary avocations in other places, that he had fallen and sustained an injury from which he was suffering, are inadmissible, as part of the res gestæ, to establish the fact of the fall.

6. APPEAL—PREJUDICIAL AND HARMLESS ERROR.
    The rule that error without prejudice is no ground for reversal is applicable only when it is clear beyond doubt that the error alleged did not prejudice, and could not have prejudiced, the party against whom it was made.

7. RELEVANCY OF EVIDENCE—ACCIDENT INSURANCE.
    In an action on an accident insurance policy, where defendant alleged that death resulted from disease or bodily infirmity, without alleging intoxication or suicide, held, that it was error to admit evidence for plaintiff that insured was not addicted to the use of intoxicating liquors, and that evidence offered for defendant, tending to show that he committed suicide, was properly excluded.

In Error to the Circuit Court of the United States for the District of Nebraska.

The National Masonic Accident Association of Des Moines, Iowa, a corporation, brings this writ of error to reverse a judgment rendered against it, and in favor of Celia V. Shryock, the defendant in error, on a certificate of membership of her husband, William B. Shryock, in that association. In her complaint the defendant in error alleged that on the 14th day of November, 1890, this accident association issued to William B. Shryock its certificate of membership, by which it agreed to pay to her such a sum, not exceeding $5,000, as should be realized by it from one quarterly payment of $2, made and collected from all its members at the date of the accident, if the death of William B. Shryock should result through external, violent, and accidental means alone, which should, independently of all other causes, cause his death within 90 days of the date of the accident, but expressly stipulated in the certificate that "this

insurance does not cover disappearances, nor injuries of which there is no visible mark upon the body, nor accident, nor death or disability resulting wholly or in part, directly or indirectly, from any of the following causes, or while so engaged or affected: Suicide, intoxication, or narcotics, dueling or fighting, war or riot, voluntary overexertion or exposure to unnecessary danger, intentional injuries (inflicted by the assured, or by any other person with the consent or procurement of the assured), medical or surgical treatment (necessitated solely by injuries, and made within ninety days of the occurrence of accident excepted), sunstroke, violating law or the rules of a corporation, taking poison or inhaling gas, disease or bodily infirmity, hernia, fits, vertigo, or sleep-walking." She then averred that on July 2, 1892, Shryock received a personal injury by a violent and accidental fall, and by striking a hard substance, on the street in the city of Omaha, from which he died in a few hours, and that she had complied with the provisions of the certificate on her part. The plaintiff in error filed an answer, in which it admitted its issue of the certificate, denied that Shryock met with any accident which caused his death, within the meaning of the certificate, set forth the stipulation of the certificate which we have quoted, and alleged, as a separate defense, that if Shryock received any bodily injury through external, violent, or accidental means, he was at the time suffering from disease or bodily infirmity, the same being some form of heart disease or other kindred disease, and his death resulted wholly or in part from that disease. The answer contained other allegations, but none that are inconsistent with those that we have recited, and none which attributed the death to any other cause than this disease.

Clark Varnum and Carroll S. Montgomery (Matthew A. Hall, with them on the brief), for plaintiff in error.

A. N. Sullivan, J. C. Cowin, and Mr. McHugh (R. Graham Frost, in behalf of counsel), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The certificate of membership in this accident association, on which this action is based, contained the covenant of this corporation to pay to the defendant in error the indemnity it promised in case the death of William B. Shryock resulted, within 90 days from the date of any accident, solely because of bodily injuries effected by external, violent, and accidental means, and independently of all other causes; and it also contained an express agreement that the insurance promised thereby should not cover any death which resulted wholly or in part, directly or indirectly, from disease or bodily infirmity. The defendant in error alleged that Shryock's death was caused by an injury to him which resulted from an accidental fall on the street. The association denied this allegation, and alleged that, if he was injured by such a fall, his death was not caused by that alone, but resulted, wholly or in part, from some disease of his heart. The burden of proof was upon the defendant in error to establish the facts that William B. Shryock sustained an accident, and that that accident was the sole cause of his death, independently of all other causes. If Shryock suffered such an accident, and his death was caused by that alone, the association agreed by this certificate to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he

was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor. These propositions have been so lately discussed and affirmed by this court that we content ourselves with their statement. Insurance Co. v. Melick, 27 U. S. App. 547, 12 C. C. A. 544, 547, and 65 Fed. 178, 181; Association v. Barry, 131 U. S. 100, 111, 112, 9 Sup. Ct. 755; Freeman v. Association, 156 Mass. 351, 353, 30 N. E. 1013; Anderson v. Insurance Co., 27 Scot. L. R. 20, 23; Smith v. Insurance Co., L. R. 5 Exch. 302, 305; Insurance Co. v. Thomas, 12 Ky. Law Rep. 715; Marble v. City of Worcester, 4 Gray, 395, 397; Association v. Grauman, 107 Ind. 288, 290, 7 N. E. 233.

On the trial of the case there was evidence tending to show that about 4 o'clock in the afternoon of July 1, 1892, William B. Shryock, who resided at Louisville, in the state of Nebraska, went from that place by rail to the city of Omaha, in that state, where he arrived about 5 o'clock in the afternoon of that day; that, some months before, he had been injured by the fall of a horse upon him, but had recovered from much of the disability caused by that injury; that he was still lame, and wore a rubber supporter on his knee; that he told one of his acquaintances, just before he left Louisville, that he was nervous, and felt badly, that he was going to Omaha, and that he wanted him to keep his grave green if he never saw him again; that after his arrival in Omaha he met another acquaintance at the Millard Hotel in that city, about 6 o'clock in the evening, and went with him to a harness shop, bought a harness, and accompanied him to the depot; that the baggage master saw him at the depot in Omaha between 7 and 8 o'clock on that evening, and noticed that he was lamer than usual, and looked like a man in pain; that about 8 o'clock on that evening he entered the store of one Keefer, in Omaha, and purchased a harness; that he was very lame and pale, and looked as if he was suffering; that about half past 8 on that evening he entered the store of one Darst, in Omaha; that he remained there an hour and a half, and seemed to be weak and in pain; that Darst then accompanied him to his hotel in Omaha, where he obtained from a drug store a phial of some liquid, and retired to his room, where he was found dead in his bed at 6 the next evening; that an autopsy was held, from which it appeared that he had long been afflicted with fatty degeneration of the heart, and that there were abrasions on his left hip and on his left knee that might have been produced by such an accident as a fall on the street; that his heart was in such a diseased condition that, in the opinion of some of the physicians, a fall which probably produced these abrasions might have caused, and probably did cause, his death; but all the physicians testified that in their opinion the injury from such a fall or accident as these

abrasions indicated would not have been sufficient to have produced death if the heart of the deceased had not been weakened by its disease.

The sufficiency of the evidence in this case to warrant the verdict is not before us for consideration, because the record before us discloses the fact that only a portion of the evidence presented to the court below is contained in the bill of exceptions. A certificate that the substance of the evidence is returned is not sufficient to warrant an appellate court in reviewing the refusal of the trial court to direct a verdict. Railway Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, and 49 Fed. 347, 350, 353; Railway Co. v. Harris, 27 U. S. App. 450, 12 C. C. A. 598, and 63 Fed. 800, 805; Taylor-Craig Corp. v. Hage, 16 C. C. A. 339, 69 Fed. 581.

But it is assigned as error that the trial court admitted in evidence the testimony of William Darst that, when the deceased came to his store, between three and four hours after he arrived in Omaha, he asked him what the matter was with him, and he said in reply that in going up from the depot he had slipped, got a fall, and struck something hard, and that he had hurt his side and the same leg that was injured before; that the court admitted the testimony of Keefer, to the effect that when he was selling him a harness at his store, about three hours after the arrival of the deceased in Omaha, the latter told him, in answer to his inquiry why he walked so lame, that he had slipped and hurt his ankle; and that the court allowed the baggage master, at the depot where Shryock went to ship his harness, to testify that, between two and three hours after his arrival in Omaha, he told him, in answer to a like question, that he had slipped and hurt the same leg that he hurt before. Each of these three witnesses testified that, when the deceased made these statements to them, respectively, he was lamer than usual, and Darst testified that he looked pale, said he was in pain, and acted as though he was. The objection urged upon our consideration, however, is not to the testimony of these witnesses, to the appearance, symptoms, and statements of the deceased to them as to his present condition and sufferings when he made these statements, and we dismiss that question here. The objection urged is that his statements that he had slipped and fallen, and struck against something hard. some hours before these statements were made, were mere narratives of a past occurrence, and were incompetent to prove the fact of the fall and accident. The rules of evidence which govern the trial of actions insure the stability, and measure the extent, of the rights of persons and property. Reversals, modifications, or variations of these rules tend to produce instability and uncertainty in these rights, and breed distrust of courts and of governments. The rule that hearsay testimony is incompetent evidence of a past occurrence rests upon settled principles of the law, the maintenance of which is essential to the preservation of personal liberty and property rights. The enforcement of this rule is not discretionary with the trial court, and its violation is fatal error. Waldele v. Railroad Co., 95 N. Y. 274; Tilson v. Terwilliger, 56 N. Y. 273; People v. Davis, Id. 95; Reg. v. Bedingfield, 14 Cox. Cr. Cas. 341; Meek v. Perry, 36 Miss. 190,

260; Merkle v. Bennington Tp., 58 Mich. 156, 24 N. W. 776; Patterson v. Railway Co., 54 Mich. 91, 19 N. W. 761; Lund v. Inhabitants of Tyngsborough, 9 Cush. 36; Martin v. Railroad Co., 103 N. Y. 626, 9 N. E. 505; Association v. McCluskey (Colo. App.) 29 Pac. 383, 384; Railway Co. v. McLelland, 27 U. S. App. 71, 10 C. C. A. 300, and 62 Fed. 116.

In Mima Queen v. Hepburn, 7 Cranch, 290, 295, Chief Justice Marshall said:

"It was very justly observed, by a great judge, that 'all questions upon the rules of evidence are of vast importance to all orders and degrees of men. Our lives, our liberty, and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered for their antiquity, and the good sense in which they are founded.' One of these rules is that 'hearsay' evidence is, in its own nature, inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case. is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible. * * * If the circumstance that the eye-witnesses of any fact be dead should justify the introduction of testimony to establish that fact from hearsay, no man could feel safe in any property, a claim to which might be supported by proof so easily obtained."

This was a just and timely warning against laxity in the enforcement, and carelessness in the application, of this rule. Why do not the statements of these witnesses that the deceased told them, two hours or more after the occurrence, that he had slipped and injured himself, fall under its ban? The argument in support of their admission is that they were a part of the res gestæ at the time of the fall, and that for this reason they come within the well-known exception to this rule, that, whenever the act of a party may be given in evidence, his declarations made at the time of the act are not hearsay, but constitute verbal acts, and are for that reason admissible, if they are calculated to elucidate and explain the character and quality of the act, and were so connected with it as to derive credit from the act itself, and to constitute one transaction with it. It is, however, equally well settled that statements which constitute a mere narrative of a past transaction are never admissible in evidence because they are detached from any material act that is pertinent to the issue. Insurance Co. v. Mosley, 8 Wall. 397, 405, 416; Railroad Co. v. O'Brien, 119 U. S. 99, 104, 105, 7 Sup. Ct. 118; Fordyce v. McCants, 51 Ark. 509, 513, 11 S. W. 694; Railway Co. v. Becker, 128 Ill. 545, 21 N. E. 524; Railway Co. v. Ivy, 71 Tex. 409, 9 S. W. 346; Adams v. Railroad Co., 74 Mo. 553; Tennis v. Railway Co., 45 Kan. 503, 25 Pac. 876; Railway Co. v. Holland, 82 Ga. 257, 10 S. E. 200. The question is, were the statements of the deceased that he slipped and fell, made as much as two hours after the alleged fall, verbal acts done at the time of the fall, and a part of that occurrence, or were they mere narrations of that occurrence? The question seems to answer itself. After the slip and fall occurred, if they occurred at all, the deceased went about his business, met a friend at the hotel about an hour later, pursuant to a prior engagement, went with him to a harness shop, bought a harness, went with him to the de-

pot to send it to his home, then went to Mr. Darst's office, and finally, at about 10:30 p. m., returned again to the hotel. It was about 8:30 in the evening when he told Darst that he had slipped and fallen on his way up from the depot, and he went up from the depot about 5 o'clock in the afternoon. So far as this record discloses, he said nothing to the friend whom he subsequently met at the hotel, and who went with him to purchase the harness, and to carry it to the depot, about this slip and fall. He did not mention it to any one, except in answer to a question about his lameness or his health, and he mentioned it for the first time either in a harness shop, where he was buying a harness, or in a depot, where he was shipping it. None of his declarations were made at the place or at the time of the fall, but at later times, and in other places, when he was not falling, or arising from his fall, but when he was carrying on other transactions, entirely disconnected with that accident. He made his earliest declarations about it when he was engaged in the transaction of purchasing and shipping a harness. That transaction can hardly be said to be a part of the res gestæ at the fall in the alley two hours before, and, if it was not, how can the declarations made while he was conducting this harness trade and shipment, and thereafter, be so?

Counsel for the defendant in error cite but a single case in support of their contention that these declarations were a part of the res gestæ at the fall, and that case is Insurance Co. v. Mosley, 8 Wall. 397. Two questions were presented at the hearing in the supreme court in the Mosley Case—First, whether or not the declarations of a deceased person as to his bodily injuries and pains some time after he suffered a fall were admissible to prove his physical condition at the time they were made; and, second, whether or not his declarations, made immediately after the fall, that he had fallen, were competent to prove that fact. The court answered the first question in the affirmative, on the ground that his declarations of the former class related to present existing facts at the time they were made. It answered the second question in the affirmative, on the ground that the declarations of the latter class were made at the time and place of the accident, and immediately thereafter. These declarations of the latter class were two.—one to his son, and another to his wife. His wife testified that between 12 and 1 o'clock at night, after she and her husband had retired, he got up and went down stairs; that she did not know how long he was gone, but when he came back he said he had fallen down the back stairs, and almost killed himself: that he vomited as soon as he got into the room; that he did not sleep any more that night; and that she was up with him all night. The son testified that he slept down stairs, and that about 12 o'clock that night he saw his father lying with his head on the counter, and he said he had fallen down the back stairs, and hurt himself very badly. Thus it will be seen that these declarations were made within a few moments of the fall, at the place where it occurred, to the first persons the deceased met after the accident, and when he was suffering severely therefrom. The ruling that they constituted a part of the same transaction with the fall

has no tendency to show that declarations made in a harness shop or depot, in the course of the purchase and shipment of a harness, hours after a fall had occurred in a street in a city, constitute a part of the latter transaction. The declarations made in the Mosley Case were made at the place of the fall, immediately after it occurred, before any other transaction had intervened, and when that was the only transaction under consideration. The declarations in the case at bar were made at places distant from the scene of the accident. They were made hours after the fall, when other transactions had intervened between the fall and the declarations, and when the deceased was engaged in transactions entirely disconnected with the accident. Moreover, the case of Insurance Co. v. Mosley was decided by a divided court, and Justices Clifford and Nelson filed a vigorous dissent, which has, in effect, since received the sanction of the supreme court in Railroad Co. v. O'Brien, 119 U. S. 99, 104, 105, 7 Sup. Ct. 118. In the latter case the surviving members of the majority of the court in the Mosley Case joined in a dissent, while the majority of the court held that the declaration of an engineer, made from 10 to 30 minutes after an accident happened, was not admissible as a part of the res gestæ, because "the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing anything that could possibly affect it." In Fordyce v. McCants, 51 Ark. 509, 512, 11 S. W. 694, the deceased was found lying in great pain about 60 yards from a railroad wreck. In response to a telegram immediately sent, a doctor, after driving 12 or 13 miles, came to treat him, and his patient then told him that he had been thrown heavily across the corner of a seat in a car, and injured. The supreme court of Arkansas held that this declaration was not a part of the res gestæ at the accident, and reversed the judgment. In Leahey v. Railway Co., 97 Mo. 165, 10 S. W. 58, the supreme court of Missouri held that the declarations of a deceased child as to the manner in which he was hurt, made at the scene of the accident, and while surrounded by the persons who witnessed the calamity, were admissible as a part of the res gestæ; but that what the child said after being carried 50 or 75 feet, and laid on a cot, and from 5 to 25 minutes after the accident, was not so admissible. In Railway Co. v. Becker, 128 Ill. 545, 21 N. E. 524, the supreme court of Illinois held that declarations as to the manner in which the injury occurred, made by one who was injured by a street car in the middle of a street 80 feet wide, after he had arisen and walked to the sidewalk, in answer to the question, "What is the matter?" were not admissible as part of the res gestæ.

Perhaps these decisions sufficiently illustrate the rule which forbade the admission of the declarations of the deceased in this case to prove the fact of the accident. If not, a large number of authorities in support of this rule, in addition to those we have cited, supra, will be found in 21 Am. & Eng. Enc. Law, p. 104, note 2, and id. p. 105, note 1. The declarations here in question were not a part of the res gestæ at the fall, and were incompetent to prove it, because they were not made during the continuance of that transaction, but after it had ended, because they were not made until subse-

quent transactions had intervened between the accident and the declarations, which completely detached the latter from the former, and because they were made in answer to inquiries, while the deceased was engaged in subsequent transactions entirely disconnected with the accident. They were mere narrations of a past occurrence. The result is that declarations made by a deceased person two hours after an injury from a fall in a street, and not at the scene of the accident, but while engaged in his ordinary business avocations in other places, that he had fallen, and sustained an injury from which he was suffering, are inadmissible, as a part of the res gestae, to establish the fact of the fall, because they are mere narratives of a past transaction, which had ended before they were made.

It is argued that this judgment ought not to be reversed on this ground, because there was other evidence of this fact in the case sufficient to sustain the verdict, and its admission was not prejudicial to the plaintiff in error. But the court below expressly charged the jury to take these declarations of the deceased into consideration in deciding whether or not he had slipped or fallen, and whether or not he died from the effects of that fall. The jury may have been persuaded by these declarations to find a verdict for the defendant in error, when, in their absence, they would have found against him; and it is impossible for us to say that they were in no way influenced by them. The presumption is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error complained of did not prejudice, and could not have prejudiced, the party against whom it was made that the rule that error without prejudice is no ground for reversal is applicable. Decry v. Cray, 5 Wall. 795, 808; Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471; Smith v. Shoemaker, 17 Wall. 630, 639; Moores v. Bank, 104 U. S. 625, 630; Railroad Co. v. O'Brien, 119 U. S. 99, 103, 7 Sup. Ct. 118.

It was error for the court below to admit testimony on behalf of the defendant in error that the deceased was not addicted to the use of intoxicating liquors, because this testimony was not relevant to any issue in the case. The plaintiff in error had alleged that Shryock's death was caused by disease or bodily infirmity, and had made no averment that it was produced by intoxication, or by any other of the excepted causes named in the certificate in suit.

For the same reason the court rightly held that evidence tending to show that Shryock committed suicide, offered on the part of the plaintiff in error, was irrelevant and inadmissible. The association pleaded no such defense, but pleaded that the death was caused by disease,—a defense inconsistent with the theory of suicide.

There are other errors assigned in this case, but some of the questions they present may not arise upon a second trial, and no good purpose would be subserved by extending this opinion for their discussion.

The judgment below must be reversed, with costs, and the cause remanded, with directions to grant a new trial; and it is so ordered.