HAHN *v.* HOME LIFE INS. CO. OF NEW YORK.

(*Jackson*, April Term, 1935.)

Opinion filed June 29, 1935.

A. J. GRIFFITH and NORMAN FARRELL, both of Nashville, for appellant.

WALTER STOKES, of Nashville, for appellee.

MR. JUSTICE DE HAVEN delivered the opinion of the Court.

On August 31, 1926, the defendant issued its policy of insurance on the life of William H. Haley for $1,000, and named complainant beneficiary. Attached to the policy was a double indemnity rider providing for the payment of an additional $1,000 "upon receipt . . . of due proof of the death of the insured and that such death occurred while the said policy and this contract were in full force and effect and resulted solely from bodily injuries caused by external means of an accidental or violent nature, and that death occurred within ninety days after such injury and as a direct result thereof exclusive of all other causes;

"Provided, however, and this contract is made upon the express condition, that the Company shall incur no liability hereunder if the death of the insured shall result from poison or from self destruction, whether sane or insane, or from aeronautics, or from riot, or insurrection, or any act incident thereto, or from any violation of law by the insured."

The insured died on June 1, 1933, from ptomaine poisoning. Due proof of his death was made. Defendant paid the face of the policy ($1,000), but refused to pay the additional sum of $1,000, as for accidental death, and assigned as its reason for such refusal that the death of the insured resulted from poison. Upon this denial of responsibility by the company, the beneficiary filed her bill herein. The grounds upon which the defense rested were (1) that the death of the insured did not result

solely from bodily injury caused by external means of an accidental or violent nature, and (2) that as the insured died from ptomaine poisoning, exclusive of all other causes, recovery cannot be had for double indemnity because it is provided in the contract that the company shall incur no liability if the death of the insured shall result from poison.

The parties stipulated in the court below that the insured "died solely of ptomaine poisoning as a result of ignorantly eating sausage a day or so before his death, which food he supposed to be good, but which was in fact bad or tainted."

The chancellor found in favor of complainant and rendered a judgment against defendant for $1,000, plus interest. The cause is now before this court on the appeal of the defendant.

The two questions presented by the assignments of error are (1) whether the death of the insured was caused by external means of an accidental or violent nature, and (2) whether the death of the insured was the result of "poison," within the meaning of the contract.

As shown by a stipulation filed in the cause, "ptomaine poisoning or 'meat poisoning' is the result of the ingestion of proteid food, which has been contaminated either by specific germs or by their poisons prior to its introduction into the body."

In *McFarland* v. *Massachusetts Bonding & Ins. Co.*, 160 Tenn., 546, 26 S. W. (2d), 159, it was held that infection of the eyes from gonococci germs, which were not consciously or voluntarily communicated to insured's eyes and which were not present as a result of his previ-

ous infection with gonorrhea, is an accidental injury within the meaning of an accident policy which insures "against disability resulting directly, and independently of all other causes, from bodily injury sustained through external, violent, and accidental means." This case had been previously before the court (157 Tenn., 254, 8 S. W. (2d), 369, 370, 64 A. L. R., 962) when the court said: "The authorities appear to sustain a recovery under the standard clause under consideration in cases of infection similar to this, where the means—that is the infection— was accidental, as distinguished from being merely the unexpected result of voluntary or intentional acts of the insured."

In *Sullivan* v. *Modern Brotherhood*, 167 Mich., 524, 133 N. W., 486, 42 L. R. A. (N. S.), 140, Ann. Cas. 1913A, 1116, it was held that the infection of an eye with gonococci to its destruction by splashing water from a tub while washing clothes therein is within the operation of a policy providing indemnity in case of the loss of sight by accident.

■■■ Ptomaine poisoning due to partaking of tainted food through mistake is within the terms of a policy insuring against death by external, violent, and accidental means. *Newsoms* v. *Commercial Casualty Ins. Co.*, 147 Va., 471, 137 S. E., 456, 52 A. L. R., 363; *Johnson* v. *Fidelity & Cas. Co.*, 184 Mich., 406, 151 N. W., 593, L. R. A. 1916A, 475; *Washington Fidelity Nat. Ins. Co.* v. *Anderson*, 187 Ark., 974, 63 S. W. (2d), 535; *United States Casualty Co.* v. *Griffis*, 186 Ind., 126, 114 N. E., 83, L. R. A. 1917F, 481. It is stated in 5 Couch on Insurance, pp. 4003, 4004:

"There are also numerous cases of death or disability incident to the partaking of food or drink, and result-

ing either from poisoning or from disease. In the case of death or disability resulting from the mechanical action of food or drink, the cases are largely agreed that it was by accident or the result of accidental means. And the authorities agree that death directly from poisoning following the unintentional eating of bad, but apparently wholesome food, is effected by accident, or is the result of accidental means, unless causes of such a character are expressly excepted."

See, also, Vance on Insurance (2 Ed.), pp. 874-880; *Sutter* v. *Mass. Bonding & Ins. Co.*, 215 Ill. App., 341.

It must be concluded that the death of the insured was caused by external means of an accidental or violent nature.

Passing to a consideration of the question of whether the death of the insured was the result of "poison," within the meaning of the contract, the language used in the contract of insurance is: "Provided, however, and this contract is made upon the express condition, that the Company shall incur no liability hereunder if the death of the insured shall result from poison or from self destruction, whether sane or insane." It is the universal rule of courts to construe language used in an insurance policy to limit the liability of the company strongly against the company. In *Manufacturers' Accident Indemnity Co.* v. *Dorgan* (C. C. A.), 58 F., 945, 956, 22 L. R. A., 620-626, Judge TAFT said:

"It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company."

In *Imperial Fire Ins. Co.* v. *County of Coos*, 151 U.

S., 452, 462, 463, 14 S. Ct., 379, 381, 38 L. Ed., 231, the court said:

". . . When an insurance contract is so drawn as to be ambiguous, or to require interpretation, or to be fairly susceptible of two different constructions, so that reasonably intelligent men, on reading the contract, would honestly differ as to the meaning thereof, that construction will be adopted which is most favorable to the insured.

"But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

In *Pacific Mutual Life Ins. Co.* v. *Hobbs,* 168 Tenn., 690, 80 S. W. (2d) 662, 663, this court said:

". . . Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, in their plain and ordinary sense."

Unless it is obvious that words of an insurance contract are intended to be used in their technical connotation, they will be given the meaning that common speech imports. *Aschenbrenner* v. *United States Fid. & G. Co.,* 292 U. S., 80, 54 S. Ct., 590, 78 L. Ed., 1137.

Death "by poison," to the average layman means death resulting from the taking of some substance commonly classed or called a poison. The average layman reading the policy here sued on would never suppose that bacterial infection from eating tainted food was included in the word "poison."

In *Kingsley* v. *Insurance Co.,* 259 Mich., 53, 242 N. W., 836, 837, the insured died from accidentally inhaling car-

bon monoxide gas. It was shown by the testimony of two doctors that this was poison. The policy excluded death from poison. The court said:

"There are, we think, few persons, except those who have received a medical education, or those who have given the matter due consideration, who would ascribe a death resulting from the inhalation of monoxide gas as due to poison. . . .

"In our opinion, the natural obvious meaning of the word 'poison'—that understood by people at large—should be applied to it as used in this policy, rather than the technical one as stated by the physicians."

In *U. S. Mutual Accident Ass'n* v. *Newman*, 84 Va., 52, 3 S. E., 805, the policy excepted liability for death caused "by the taking of poison or contact with poisonous substances." The court said: "All the indications showed that he had been killed by the coal gas." After stating that the terms used in such policies "are to be understood in their plain, ordinary, and popular sense," it was held that the trial judge did not err in refusing "to instruct the jury [in effect] that inhaling coal gas was a taking of poison, if they believed coal gas to be a poisonous substance, which, when inhaled, destroyed life."

In *Omberg* v. *United States Mut. Acc. Ass'n*, 101 Ky., 303, 40 S. W., 909, 911, 72 Am. St. Rep., 413-418, death of the insured resulted from blood poisoning caused by the bite and sting of an insect. The policy excepted the company from liability in the event of death from "poison in any form or manner." The court, in holding the company liable, said:

"So, death from a rattlesnake bite is clearly from poison and contact with poisonous substances; but we presume no one will contend that recovery in such a

death could be denied. Such causes of death as are last mentioned, are not understood to be causes of 'death from poisoning' or 'contact with poisonous substances,' in the ordinary meaning of those terms.''

We do not consider that the insured's death from ptomaine poisoning was death by ''poison,'' within the meaning of the insurance policy sued on in this case.

Appellant relies strongly on the case of *Maryland Casualty Co.* v. *Hudgins*, 97 Tex., 124, 76 S. W., 745, 747, 64 L. R. A., 349-351, 104 Am. St. Rep., 857, 1 Ann. Cas., 252. It appears that the insured died from ptomaine poisoning caused by accidentally eating spoiled oysters. The policy provided: ''This insurance does not cover . . . injuries, fatal or otherwise, resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled.'' The court said:

''The plain meaning of this language is that the company excepts from its liability all injuries which may arise from whatever thing of any kind or character, poisonous or not, that Hudgins might voluntarily and consciously take into his stomach—that is, to swallow as food or drink—and any other meaning attributed to the exception would be in disregard of the plain language, and would give to the policy a force and effect never intended by the parties.''

This case is not in point here for the language of the exception, above quoted, is far broader than that contained in the policy here in question.

Other cases cited on behalf of the appellant have been examined, but our conclusion is that the death of the insured from ptomaine poisoning was not death from ''poison,'' within the meaning of the insurance policy sued on in this case.

The decree of the chancellor must be affirmed.